THE PARISH & BINGHAM CORPORATION *v.* JACKSON.

*Contracts—Employer and employe—Profit sharing plan for ensuing year—New or old employes entitled to bonus, when—Statute of frauds inapplicable, when.*

1. A proposition made by a corporation to its employes to become effective at the beginning of the next year, whereby the wage for the next year was to be based upon a profit-sharing plan, the work of the men to be graded upon a scale of one thousand, and they, if they had a perfect scale, to receive at the end of the year thirty per cent. in addition to whatever the wage might be, which was thereafter to be determined as outlined in the proposition, the bonus to be forfeited if a workman voluntarily quit before the expiration of the year, becomes a valid and binding contract between the corporation and the employes who, with knowledge of the plan, remain or come into the employ of the corporation at the beginning of the new year or subsequent thereto.

2. An employe having performed services under such contract, it does not come within the provision of the statute of frauds relating to contracts not to be performed within one year.

(Decided June 10, 1921.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. White, Brewer & Curtis,* for plaintiff in error.

*Messrs. Thompson, Hine & Flory* and *Mr. Carl V. Weygandt,* for defendants in error.

VICKERY, J.    This cause comes into this court on petition in error to the municipal court of the city of Cleveland, the purpose of which is to reverse a judgment obtained by Alvin B. Jackson against The Parish & Bingham Corporation.

Prior to January 1, 1919, Jackson was employed by The Parish & Bingham Corporation as a foreman in its assembling department, and was drawing a fixed wage, which amounted to about $190 or $195 a month.   In December, 1918, a written proposition of a profit-sharing plan was promulgated by the officers of The Parish & Bingham Corporation, the purpose of which was to insure permanency of employment, *i. e.,* that the men would not quit hastily and before the expiration of the year, and in pursuance thereof a labor plan was devised by The Parish & Bingham Corporation whereby the company was to establish a basis for profit-sharing in addition to the wages, which were to be determined later, the work of the men to be graded upon a scale of one thousand; and then if they had a perfect scale they were to have thirty per cent. in addition to whatever the wage might be, which was thereafter to be deter-

mined. But this sum of thirty per cent. was to remain in the hands of the company, and at the end of the year was to be paid to the respective workmen, and if the workmen voluntarily quit before the expiration of the year then this so-called bonus was to be forfeited. This, it was thought, would insure not only efficiency but permanency of employment, as the men would hardly quit voluntarily before the expiration of the year and thus forfeit this thirty per cent., and inasmuch as the percentage would be based upon efficiency it was thought it would make the men more efficient.

This proposition was promulgated in writing and handed to each of the men, and it was to go into effect January 1, 1919. The men did not know what the wages were to be that were to be paid to them the first day in January. The plan adopted, exclusive of the thirty per cent., the so-called bonus, resulted in a reduction of Jackson's salary from $195 to about $175 per month. For a long period of time, the inspections were made and credited to the men, including Jackson. This was, of course, to their credit, but it could not be drawn until the expiration of the year, and then only in case the men worked for one year. This matter proceeded along until September, 1919, when Jackson was discharged, and the corporation refused to pay him the bonus, but did pay all the wages that were due up to that time, whereupon he brought his suit in the nature of damages for wrongful discharge and for the bonus that he would be entitled to under the terms of the plan promulgated by The Parish-Bingham Corporation.

It is claimed in argument by The Parish-Bingham Corporation that it had the right to discharge Jackson, and that it discharged him for good cause, but

this question was fairly submitted to the jury and the jury found that he was wrongfully discharged, and it is not seriously contended that that was contrary to the evidence, and so we shall govern ourselves as though he were wrongfully discharged. Then the question arises, What are his rights to this bonus under the situation as we find it existing in this case?

It is argued that this bonus was a mere gratuity, and that there was no consideration which would compel The Parish-Bingham Corporation to pay the bonus, that it was a mere promise of a gift, and we are cited to the case of *Black* v. *The W. S. Tyler Co.*, 12 Ohio App., 27, a case from this county, in which the syllabus reads:

"The mere fact that a corporation has decided as a matter of policy to allow its employes to share in the profits does not create a contract obligating it to pay the same, when the offer of the company did not induce the employe to do or forego what he would not have done or foregone but for such offer."

We are quite in accord with the doctrine laid down in the *Black* v. *Tyler Co. case, supra,* but we think it is easily distinguishable from the case at bar. There the wages of the workmen were not in the least affected. It was simply a promise upon the part of the W. S. Tyler Company to pay them in excess of their wages a dividend earned by the company, and it nowhere assumed the form of a contract.

The instant case is more in accord with the doctrine laid down in the case of *Zwolanek* v. *Baker Mfg. Co.*, 150 Wis., 517, reported in 44 L. R. A. (N. S.), 1214; and almost all the questions that arise

in the instant case are disposed of in the *Zwolanek case, supra.*

In the instant case it will be noted that a proposition was made in December that the wages for the next year would be based upon a profit-sharing plan, and that the amount of bonus was really a method of arriving at the wages. The only object of having it called a bonus and working the plan out in that way was for the purpose of retaining the funds, so as to insure the workmen staying during the year, and to assure more efficient work on the part of the workmen.

Now this proposition made by The Parish & Bingham Corporation to its workmen in the plan outlined, called the profit-sharing plan, was an offer, to start the beginning of the new year, and any person who remained or came into the employ of The Parish & Bingham Corporation at the beginning of the new year, or subsequent thereto, with the knowledge of this plan, on going to work accepted that proposition and made it a valid and binding contract upon the two parties, and it was a contract based upon a consideration.

Quoting from *Zwolanek* v. *Baker Mfg. Company, supra,* the second and third propositions of the syllabus:

"But a by-law of a manufacturing corporation providing that any person who should have been in the regular employ of the company for a certain time should thereupon begin to share in the surplus earnings of the company, provided he did not quit or was not discharged prior to January 1st of any year, was, when communicated to the employees, an offer of a reward for constant and continuous service and, when accepted by an employee by substan-

tial compliance with the terms of the offer before its withdrawal, became a complete and valid contract.

"It was not essential in such a case that the employee should have informed the company that he relied upon the offer in continuing his work."

You will notice that the instant case is still stronger than the *Zwolanek case,* because here the proposition was made to apply in the future, to-wit, from January 1, 1919, and all employes who were then working, at least, among whom was the plaintiff, by continuing in the employ accepted this proposition and it became a valid and binding contract.

Now it is claimed that this contract cannot be enforced because it is a verbal contract and one which could not be performed within a year. The *Zwolanek case* disposed of that proposition likewise. Proposition 4 of the syllabus is as follows:

"The statute of frauds relating to contracts not to be performed within one year has no application to such a case, because when the contract comes into existence the only obligation is that of the company to pay what is due under it."

We must not get confused between an executed contract and an executory contract. If in December this contract had been accepted by the plaintiff Jackson, and it had then remained executory, whether he could have sued and obtained damages or not is immaterial, because having gone to work under the contract, even though unenforceable under the statute of frauds, after having performed work under the contract, I think a diligent search of the authorities will fail to show a case where a person has been denied the right to recover for his labor. In fact, there are a great many cases which

hold that such contracts are not within the statute of frauds when they relate to personal services, because, as is stated in one of the Ohio cases, a man might die before the year was up, which would terminate the contract. But without being driven to this extremity, without the authority of the *Zwolanek case,* the syllabus of which I have quoted, it is perfectly apparent that here, under this contract, if it went into effect at all, it went into effect on January 1, and the man performed his services under that contract, and it would be manifestly unjust to refuse him the right to recover compensation simply because the contract was verbal and could not be performed, if such were the fact, within a year. To illustrate: I might make an executory contract to lease an apartment, making the lease today, for one year, beginning July 1. If the landlord refused to let me in, I would undoubtedly have no redress, because it was a contract that could not be performed within a year and was verbal, and, therefore, unenforceable, but suppose on July 1 I go into possession under that contract and stay there for a month, and he then seeks to get me out on the ground that the contract was verbal and was made June 10 to last for one year from July 1, and could not be performed within a year, I say I do not believe any authorities can be found to sustain that proposition.

We have been cited to several authorities, but we do not think they are in point, or at least they do not change our views in regard to the matter. This *Zwolanek case* has been, as I have said, likewise reported in 44 L. R. A. (N. S.), and the notes to this authority throw some light upon the proposition, but they do not add materially to the weight of authority of the 150th Wisconsin, *supra.*

We think, therefore, that there was a contract existing between The Parish & Bingham Corporation and the plaintiff, whereby, for his wages, he was to receive in addition to a fixed sum, the amount allowed by a bonus, to be fixed in a way that was outlined in the proposition, and that the nature of this contract was such as barring good reason for his discharge gave him the right to regard it as a contract for a year, and that wrongful discharge before the expiration of the year would make The Parish & Bingham Corporation liable not only for the bonus that had accrued at that time but for the wages, and bonus as a part of the wages, for the time that he was not permitted to work, less, of course, the sum that he might reasonably earn in like employment subsequent to that time. The difficulty seems to be that there would be no basis to figure the bonus after he was discharged. In this case I believe there was no figuring of a bonus after the first six months, and the difficulty of arriving at the proper sum is urged as a reason why there should not be any sum allowed.

Now, the right to recover is based upon the wrongful discharge by the defendant and upon the wrongful conduct of the defendant. Is the plaintiff deprived of his right to these bonuses if this view is adopted? Now it will be remembered, from the record in this case, that the basis of computation for the bonus was fixed upon a thousand points, and then apparently this could be reduced by a series of deductions for inefficiency in the nature, perhaps, of penalties or fines for the workman, in order to keep his production up to the maximum. Now, if this survey and inspection was not made by the company, who is to blame for it? Should the workman

be penalized because of the failure of the defendant company to perform its part of the contract, as outlined by the bonus plan that was submitted to the men and under which they went to work? It seems to me, in the absence of any inspection, or circumstance which would tend to reduce the amount from a thousand points specified, then the workman, the plaintiff in this instance, would be entitled to recover the maximum, which would be the thirty per cent. of his wages, whatever they might be, and the burden of showing an amount less than this would be upon the defendant, and if it failed to make the proper inspection, and the computations therefrom, that would be its fault and not the fault of the plaintiff. We think the measure of damages should have been in this case in the full amount of his wages, with a thirty per cent. bonus added, and then a deduction from that amount for all the plaintiff had been able to earn outside. It seems that the court below did not adopt this rule, but adopted a rule more favorable to the plaintiff in error, for which it cannot complain.

We have gone through this record, and while there may be minor errors, yet in view of the entire record such errors are not so prejudicial as would warrant a reversal of this case, and the judgment of the court below will be affirmed.

As to the case of *H. A. Belk* v. *The Parish & Bingham Corporation,* what has been said in this case will also necessarily apply to that case, and the judgment in the *Belk case* will likewise be affirmed.

*Judgment affirmed.*

WASHBURN, P. J., and INGERSOLL, J., concur in judgment.