## In re WIL–LOW CAFETERIAS, Inc.
### KAFTAN v. SIEGEL.
No. 256.

Circuit Court of Appeals, Second Circuit.

April 29, 1940.

430

Otterbourg, Steindler & Houston, of New York City (Aaron Rosen and Arnold A. Jaffe, both of New York City, of counsel), for trustee-appellant.

Boudin, Cohn & Glickstein, of New York City, for creditor-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the trustee in bankruptcy of Wil-Low Cafeterias, Inc., from an order of the District Court reversing the disposition by a referee of the claim of Simon Kaftan and allowing it in the sum of $47 against the estate in bankruptcy as an expense of administration.

Kaftan is a member of the Cafeteria Employees Union, Local 302, affiliated with the American Federation of Labor. His claim of $47 is for one week's wages and was held by the District Court to be due in lieu of a vacation with pay. It is said that similar claims are made on behalf of some two hundred other employees of Wil-Low Cafeterias, Inc., so that this is a test case.

On April 20, 1937, a petition for reorganization was filed by the debtor pursuant to § 77B of the Bankruptcy Act, 11 U.S.C. A. § 207. By order of Judge Patterson, of the same date, the debtor was permitted to continue to operate the business. The order, so far as pertinent, reads as follows:

"(7) That said Debtor be, and it hereby is, until the further order of this Court, authorized to continue, manage, and operate the business and properties of the Debtor * * * with full power and authority to carry on, manage and operate the said business and properties of the Debtor * * *; and to perform the existing contracts of the Debtor, * * *"

"(8) That the said Debtor be, and it hereby is authorized, in its discretion and subject to the approval of this Court, to appoint and employ such managers, agents, employees, servants, accountants, attorneys and counsel as may in its judgment be advisable or necessary in the management, conduct, control or custody of the affairs of the Debtor * * * including authority to make payment of debts entitled to priority and of the wages and salaries of agents, employees, laborers and servants of said Debtor, * * *. accrued or to accrue, which are entitled to priority by statute, or which the Debtor shall deem to be necessary or expedient to pay to secure the continuation of their services or to avoid detriment to the working organization of the business."

By the same order, the debtor was also given all the power of a receiver "in cases of this kind" and "all the powers of a trustee appointed pursuant to said Section 77B".

On October 7, 1936, some six months prior to the filing of the petition for reorganization, the debtor entered into a collective bargaining contract with Cafeteria Employees Union, Local 302, wherein the union was recognized by it as the representative chosen by the employees to bargain collectively on their behalf. The contract provided that all of the debtor's employees were to be members of the union and subsequent to the making of the contract more than a majority were members. On May 11, 1938, a further contract was entered into by the debtor with the union, paragraph 28 of which reads as follows: "All full time employees who will have concluded six months' employment during the months of June, July, August, or September shall be entitled to three days' vacation with pay. All full time workers who will have completed one year's employment during the said months shall be entitled to

a week's vacation with pay. All vacations shall take place during the months of June, July, August and September but may take place at any other time by consent of the Union and the employer."

The debtor operated under this contract until June 7, 1938, when, because no approvable plan of reorganization had been presented, the debtor was adjudicated a bankrupt, seven of its twelve stores were immediately closed and the employees thereof summarily discharged. A trustee in bankruptcy was likewise appointed to liquidate the business.

The claimant Kaftan, who had worked for the debtor for nine years, was one of the discharged employees. At the time of the making of the order of adjudication and Kaftan's discharge he had received no vacation, though it had been already set for the first of August. Like many of the other employees of the debtor he filed his claim for one week's wages contending that at the time of his discharge on June 7, 1938, he had earned a right under the contract of May 11, 1938, to one week's vacation with pay. Judge Leibell allowed the claim of $47 for one week's vacation with pay as an expense of administration incurred by the debtor while engaged in administering the estate as the claimant had performed a year's service prior to June 1, 1938, and had, therefore, earned the right to the agreed vacation with pay.

The trustee in bankruptcy has appealed, maintaining that the allowance of the claim as an expense of administration was erroneous: (1) because the contract of May 11, 1938, was not made in the ordinary course of business and, therefore, required the approval of the District Court, which had not been given, (2) because the order of Judge Leibell was ambiguous as to the nature of the claim allowed.

We feel no doubt that the order allowed the claim as an expense of administration but without determining its priority as against other expenses of administration incurred by the debtor. Questions of priority as between various expenses of administration will have to be left for adjustment by the bankruptcy court after proof of the other expenses and of the extent of assets available for distribution.

The important question is whether the debtor had the power to enter into the agreement of May 11, 1938, without sanction of a court order. Prior to that date it had made the collective bargaining contract with the Union of October 7, 1936, and that contract the court below seems to have assumed was like the one of May 11, 1938. The assumption is hardly borne out by the record for we find nothing indicating a provision for vacation with pay, but we do not think that important. Judge Patterson's order of April 20, 1937, not only authorized the debtor to operate the business and to perform existing contracts but also "in its discretion and subject to the approval of this court, to appoint and employ such managers, agents, employees, servants, *. * * as may in its judgment be advisable or necessary in the management, conduct, control or custody of the affairs of the debtor * * *." It does not seem to us that these provisions required the debtor to apply to the court in order to make the simple and usual contracts of hiring necessary to the authorized conduct of the business and our decision in Re Avorn Dress Co., 2 Cir., 78 F.2d 681, 683, we think bears this out. It may be that the court would have had the power to rescind such a contract so far as it remained unperformed, but no such thing was attempted.

The employees here seem to have received their pay up to the date of the order of liquidation on June 7, 1938. It is not questioned that these payments were properly made under the order authorizing the debtor to do business. The pay for a vacation completely earned prior to the discharge we think stands in as good a position.

In Chicago Deposit Vault Co. v. McNulta, 153 U.S. 554, at page 561, 14 S.Ct. 915, at page 918, 38 L.Ed. 819, the Supreme Court remarked: "It is undoubtedly true that a receiver, without the previous sanction of the court, manifested by special orders, may incur ordinary expenses or liabilities for supplies, material, or labor needed in the daily administration of railroad property committed to his care as an officer of the court; but it seems equally well settled that the courts decline to sanction the exercise of this discretion on the part of receivers in respect to large outlays, or contracts extending beyond the receivership, and intended to be binding upon the trust." The same general rule was laid down in Northern Pac. Ry. Co. v. American Trading Co., 195 U.S. 439, 461, 25 S.Ct. 84, 49 L.Ed. 269.

In these days of collective bargaining between labor unions and corporations it

would seem strange that the contract which had been arrived at by negotiation, usual in form and substance and relating to ordinary wage arrangements should be held unauthorized because it contained a provision for one week's vacation to all employees who had been with the firm more than a year before it was entered into.

■ A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations between employer and employee. The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1, so that the week's vacation with pay was completely earned and only the time of receiving it was postponed. If the employer had discharged the employee wrongfully after the latter had done the work necessary to earn a vacation he could not be deprived of the benefits due him. Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N.W. 769, 44 L.R.A.,N.S., 1214, Ann.Cas.1914A, 793. Cf. In re B. H. Gladding Co., D.C., 120 F. 709. In the Wisconsin case the employee had substantially performed his contract and earned a bonus which he was not to receive until the end of the year. He was held entitled to it where there had been an unjustifiable discharge. It can make no difference whether the discharge is due, as here, to a cessation of business by the employer, or was wrongful. In either event an amount earned would be a valid expense of administration.

In Donlan v. Boston, 223 Mass. 285, 111 N.E. 718, 719, a schoolteacher died during the summer vacation having completed her teaching for the preceding academic year. Her salary was payable monthly and payment of salary for the last month of the year had not become due at the time of her death. The Supreme Court of Massachusetts treated the contract as subject to "an implied condition * * * that she should be living and physically able to do the work" and disallowed her salary for the final month. With much respect we cannot agree with the decision. It has been criticized by Professor Williston in a foot note to Sec. 838 of the Revised Edition of Williston on Contracts published in 1936. He says: "There was no express condition, qualifying the city's promise, and as the teacher had substantially fulfilled her contract, there was no failure of consideration." In the case at bar similarly the claimant had worked for a year and was entitled to his vacation pay.

The order of the District Court was right and should be affirmed.

Order affirmed.