**COLEMAN v. GRAYBAR ELECTRIC CO., Inc.**

**No. 13747.**

United States Court of Appeals Fifth Circuit.

April 1, 1952.

under which Coleman was employed and discharged his duties as an appliance salesman for Graybar Electric Company, Inc., from December, 1947, until his services were terminated effective February 15th, 1949. After his services were terminated, Coleman instituted suit for commissions alleged to be due under the compensation plan, or, in the alternative, upon *quantum meruit*. The claim is essentially under the plan, and is so treated by the appellant here. The complaint alleges, among other things, that Graybar was informed that the plaintiff had been making $300.00 per month as salary and was interested in securing a position of permanence as a salesman; that he accepted the offered employment on a drawing account of $200.00 per month "but with full participation in the additional compensation plan available to salesmen working for the company;" that he faithfully and diligently performed the duties of a salesman until the time of his discharge, and that "such discharge was without cause and was arbitrary and capricious and constituted an unwarranted and unjustified attempt by defendant to deprive plaintiff of the commissions, bonuses, and other compensation which plaintiff, through his extended and diligent service to defendant, was entitled to receive from the defendant on the following first day of April, which was forty-four days after plaintiff's discharge by defendant." Plaintiff asked defendant what the reason for his discharge was, but defendant could not, and did not, assign any specific cause or reason therefor. In answer, the defendant pleaded the language of Coleman's application for employment in which he agreed that "employment is at the discretion of the company and may be terminated at any time." It denied that the plaintiff was discharged without cause, and denied any indebtedness upon the ground that the plaintiff had failed to meet the requirements of the additional compensation plan under which commissions sued for were provided. The terms of the employment contract and of the compensation plan were also asserted as an affirmative defense. It was alleged that despite the defendant's efforts to give plaintiff full

J. W. Keerans, F. L. Andrews, Houston, Tex., for appellant.

Walter J. Morrison, Houston, Tex., for appellee.

Before BORAH, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

The question presented by this appeal involves the construction of the employment agreement and compensation plan

opportunity to prove himself a competent and satisfactory employee, plaintiff showed himself to be unreliable both in his dealings with defendant and in dealing with defendant's customers, and accordingly it became necessary to terminate his employment. That this act on defendant's part was an exercise of its discretion and was performed in good faith. The provision of the employment plan alleged to debar the plaintiff from recovery under the circumstances was specifically alleged and is set forth in the margin.[1]

▆▆ Upon the trial, it was agreed by the parties that only the question of liability should be determined with the matter of amount thereof to be deferred for future consideration. Upon the conclusion of the evidence presented on behalf of the plaintiff, the Court upon the motion of the defendant, predicated upon the contractual provisions and the asserted absence of any showing of bad faith, directed the jury to return a verdict in favor of the defendant, upon which judgment was duly entered. This action is assigned as error.

The appellant does not challenge, but concedes, the right of the defendant to discharge him at any time, but asserts that nevertheless should it do so without cause it was impliedly obligated to pay the plaintiff the commissions earned by him up until the time of his discharge; that there is sufficient evidence in the record to warrant submission to the jury of the question of whether there was good cause for such discharge, and, further, that even if the issue "is one of good faith rather than one of good cause" that there is sufficient

evidence in the record to warrant submission to the jury of the question of defendant's good faith in discharging the plaintiff. The appellee contends that the language of the compensation plan[2] is controlling as a matter of law and that since the conditions and provisions stipulated therein were not met the appellant can not recover the commissions provided by the plan; further, that it being conceded that Coleman's employment could be terminated at any time, Graybar had the legal right to terminate it without cause and no recovery could be predicated upon the exercise of such legal right; and that even if it could be conceded that Graybar's reason for terminating the employment must not be founded in bad faith, the burden of proving such bad faith was on Coleman, the plaintiff, and that the record is entirely void of such proof.

The exact question here involved does not appear to have been considered by the Courts of Texas, in which State the contract was made and was to be performed. It has been before other Courts. These have reached differing results dependent upon the circumstances of the respective cases and the terms of the contract then under consideration. In the present case, the stated purpose of the compensation plan is to provide "an incentive to continuous service with the company." The further provision that the employee must "remain in the service of the company until and including the first of April following the year for which the compensation hereunder is payable" is, of course, entirely consistent with this purpose. The

1. "It is the purpose of this compensation plan to provide not only an additional incentive to the employees coming under it for more effective effort, but also an incentive to continuous service with the Company. It is, therefore, further provided that an employee, in order to earn and be entitled to extra compensation under this plan for any calendar year, must in addition to all other provisions of the plan remain in the service of the Company until and including the first of April following the year for which the compensation hereunder is payable. If he leaves or ceases to be in the employ of the Company on or prior to April 1st of

said following year, the payment of his drawing account as herein defined up to the time he ceases to be actively engaged in the work assigned to him shall be a full discharge of the Company's obligations toward him respecting compensation."

2. Appellee also relies upon a further provision: "Nothing in this compensation plan shall be deemed to waive or impair any right of the Company in its relations with its employees as to hiring, laying off, discharging, rerating, or transferring them or making other changes in the condition of their employment."

provision that if the employee "leaves or ceases to be in the employ of the company" the drawing account shall be a full discharge of the company's obligation respecting compensation, is likewise consistent with the stated purpose of the plan if it be construed to mean that such leaving or cessation of employment shall result from either the voluntary quitting of employment, or the termination of such employment by the company for a reason, or reasons, which renders continuous service undesirable. However, a construction of the language which would permit the employer to terminate the continuity of service without any cause and as a matter of arbitrary choice, or because of a desire to evade the payment of additional compensation would be entirely inconsistent with the purpose of the plan and, in the absence of clear and compelling language, should not be adopted. In the absence of language clearly contemplating and providing for such a result, the parties should not be held to have intended such a consequence. To hold that they did, we must conclude that the parties, by the language quoted, stipulated that the employer reserved to itself the right to determine whether the additional compensation, conditionally promised it is true, should ever be received because such employer could refuse to comply with it merely by discharging the employee at its own whim. We do not think that the language of the employment application which granted the employer the right to terminate the employment in its discretion at any time can be so imported into the language of the compensation plan as to authorize a construction of its provisions to mean also that a discharge, even if otherwise authorized without cause, would bring such a cessation of employment within the terms of the forfeiture provision. It is true that this provision of the employment contract would, under settled principles, prevent the imposition of liability upon the defendant for damages occasioned by the discharge. But this is not the question here, but rather whether the existence of such a right of discharge requires or authorizes a construction of the provisions of the compensation plan which would leave the de-

termination of the employer's liability for such compensation solely at the discretion of the employer to be effectuated by the discharge of the employee at its pleasure. If such was the result intended by the parties it should have been expressed in terms so clear as to remove any valid ground for construction. Construing the provisions of the compensation plan, we think the absence of any express language in the provision now under question prevents a holding that a discharge of an employee, even though arbitrary and without any cause, is the kind of cessation of employment referred to and intended. Upon similar principles, the same result was reached in Haag v. Rogers, 9 Ga.App. 650, 72 S.E. 46, 47, cited and relied upon by the appellant. There, as here, the employment was at will and therefore the defendant-employer had the right to terminate the contract at its pleasure. The Court, quoting from Georgia authorities, but which merely express principles of construction generally recognized, said:

"It is pointed out that there is an express provision in the contract that it was to continue only 'so long as mutually agreeable to both parties,' and that, therefore, the defendant had the right to terminate the employment at his will, either with or without cause. 'The law will not construe a contract so as to give the debtor the right to destroy it by a simple refusal to comply with it, unless the terms of the contract are so clear and unambiguous as to make irresistible the conclusion that no other result could possibly be reached, and that such was the intention of the parties. Civ.Code 1895, § 3675, par. 4 (Civ. Code 1910, § 4268). Nor will a contract be so construed as to authorize one of the parties to take advantage of his own wrong, unless it be plain and manifest that such was the intention of the parties.' Finlay v. Ludden, 105 Ga. 264, 31 S.E. 180; Milledgeville Cotton Co. v. Cary, 9 Ga.App. [391], 71 S.E. 503.

"Applying the rule just quoted, we are of the opinion that the proper construction to give the contract before us is that either party might terminate it at will; that if the plaintiff terminated it prior to the close

of the season, or caused it to be terminated by such conduct on his part as would ordinarily authorize a discharge, he forfeited all claim to compensation beyond $10 per month; that, if the defendant terminated it voluntarily and without the plaintiff's having first given adequate cause, he would be liable not only for the $10 per month, but for the additional $8 per month which was being held back as a guaranty against the plaintiff's quitting the employment before the close of the season. It is frequently the case that an employer is willing to pay a higher rate of wages to a servant who will bind himself to remain in the employment for a definite period, or so long as the employer may desire to keep him, than to one who may quit at a time when his services are most needed. It is entirely legitimate for an employer to contract that the employé shall have so much wages for his services generally, and so much additional if he does not quit prior to a named date. It is also legitimate (when the terms of the contract so permit) for the employer to hold back the extra pay until lapse of time has demonstrated that the employé has done his part. But in such a case, unless the language of the contract is too clear to admit of any other reasonable interpretation, the employer can not capriciously terminate the contract himself so as to avoid liability for the wages at the higher rate. Here the season was nearly over. To construe the contract as allowing the defendant then to terminate it without sufficient cause, and thereby to deprive the plaintiff of the extra compensation which was being held back as a guaranty against his quitting, would be to give the contract an oppressive and unnatural effect, which can hardly be said to have been within the fair contemplation of the parties."

To the same effect is the ruling in Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N.W. 769, 44 L.R.A.,N.S., 1214; Roberts v. Mays Mills, 184 N.C. 406, 114 S.E. 530, 28 A.L.R. 338. Cf. Wil-low Cafeterias, Inc., (Kaftan v. Siegel) 2 Cir., 111 F.2d 429, 432.

We have examined the cases cited by the appellee in support of its contention that the contractual provisions made the question of whether the employee was in the employment of the defendant on April 1st the sole test of entitlement to the commissions provided by the compensation plan.[3] We do not find these authorities in point here, since in the last cited case the Court construed the bonus as a gratuity, and in each of the others the contract plainly provided that the bonus should be forfeited in the event the employee was discharged "for any cause whatsoever within the sole judgment of the company", or that it expressly stated the *payment* was at the discretion of the company (and not the discharge), or there was contained in the contract, as in the Montgomery Ward cases cited and in an explicit reference and context to the forfeiture provision, the reservation of the right of termination of services "for cause or otherwise." These cases therefore by their express languages presented an instance where there was no need for construction of the intention of the parties such as we find necessary here.

We conclude that in this case the contract did not authorize a forfeiture of additional compensation provided in the plan of compensation if the services of the employee were terminated arbitrarily and without cause.

The evidence on behalf of the plaintiff as to the manner in which his services were performed and as to the unreasonableness of his discharge is not strong. He admitted that he did not conform to company rules and that he was told five or six times that if he didn't improve he was going to lose his job. He was once told that "the next time he did something wrong, he was going to get fired." However, the appellant attempted to explain these complaints and rebukes as merely a part of his sales manager's efforts to improve his sales efforts along with those of other salesmen. On the other hand, it was shown by appellant's testimony and that of his employer's agents that he was

3. These are: Harding v. Montgomery Ward Co., Ohio App., 58 N.E.2d 75; Montgomery Ward & Co. v. Guignet, 112 Ind.App. 661, 45 N.E.2d 337; Muir v. Leonard Refrigerator Co., 269 Mich. 406, 257 N.W. 723; Johnson v. Schenley Distillers Corp., 181 Md. 31, 28 A.2d 606, among others.

successful at his job, had won several sales contests; that when he was given notice of his discharge the sales manager proposed that he go to work for one of the defendant's customers, and one of his customers testified that plaintiff had serviced his account satisfactorily and was attentive and enthusiastic about his work and did nothing to reflect discredit upon the defendant. As the evidence was presented, and from the defendant's agents called as witnesses by the plaintiff, no specific cause or definite reason for the discharge of appellant was made to appear. We can not say that, considering the testimony in the light most favorable to the plaintiff in testing its sufficiency to withstand the motion for a directed verdict, the jury would not have been authorized to find that no cause for the discharge was shown. We feel that the ends of justice require another trial upon which the facts of the case may be fully developed and whereupon the applicable principles of law which we have hereinstated may be applied.

The judgment of the trial Court is reversed and the cause remanded for a new trial.

Judgment reversed.