Eugene R. LEMMON, Plaintiff-Appellant,

v.

CEDAR POINT, INCORPORATED, Defendant-Appellee.

No. 18312.

United States Court of Appeals Sixth Circuit.

Jan. 30, 1969.

John S. Stith, Cincinnati, Ohio, for appellant, Sherman Unger, Cincinnati, Ohio, on the brief, Frost & Jacobs, Cincinnati, Ohio, of counsel.

Thomas P. Mulligan, Cleveland, Ohio, for Appellee, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on the brief.

Before O'SULLIVAN, EDWARDS, and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing plaintiff's action. Defendant Cedar Point, Inc. owns and operates resort and amusement park facilities in Sandusky, Ohio. In 1961, it entered into both an employment contract and a stock option agreement with plaintiff, and until 1964 plaintiff supervised the development and rehabilitation of defendant's facilities. In October, 1964, defendant discharged plaintiff and the present litigation ensued.

■ Plaintiff asserted two causes of action in his complaint. In the first he alleged that he and the defendant corporation entered into an employment contract in May, 1962[1] which provided for plaintiff's employment at a stated annual salary through January, 1967; that in the summer of 1964, with the prior knowledge and approval of defendant's officers, he tendered his resignation effective February 8, 1965; that on October 22, 1964 defendant terminated plaintiff's employment; that under the employment contract defendant was obligated to pay plaintiff's salary until the expiration date of the contract except to the extent such salary was offset by oth-

er earnings; and that plaintiff was not gainfully employed until February 1, 1965. He asked for damages in the amount of $5,499.99, the equivalent of his base salary from October 22, 1964 to February 1, 1965. In his second cause of action plaintiff alleged that on March 14, 1961, he and the G. 'A. Boeckling Company (defendant's predecessor) entered into a written stock option agreement pursuant to which plaintiff was permitted to purchase 20,000 shares of defendant's common stock in yearly increments of 4,000 shares provided he remained in the continuous employ of defendant during the year in which the option was exercisable; that during the summer of 1964, he informed defendant that the State of California was seeking his services; that defendant, through its officers, represented to plaintiff that he could consider such employment; that in reliance on this representation plaintiff accepted a position with the State of California and tendered his resignation effective February 8, 1965; that on October 22, 1964 defendant discharged plaintiff; that under the provisions of the stock option agreement plaintiff was entitled to 4,000 more shares of defendant's common stock; and that he attempted to purchase these shares but defendant refused to transfer them. He asked for a judgment requiring defendant to specifically perform its obligation under the option agreement by transferring to him the 4,000 shares in question at the option price of $5.00 per share.[2]

Defendant filed a motion to dismiss plaintiff's second cause of action for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). The District Judge sustained defendant's motion and, since only $5,499.-99 in damages was sought in plaintiff's

---

1. This contract susperseded the original contract of 1961.

2. This prayer for relief is the only indication in plaintiff's complaint that the requisite jurisdictional amount of $10,-000 is involved in this action. There is no proper allegation that the "matter in controversy exceeds, exclusive of inter-

est and costs, the sum of ten thousand dollars." However, this deficiency can be cured by amendment pursuant to Rule 15 of the Federal Rules of Civil Procedure since it is apparent that jurisdiction does in fact exist. 3 J. MOORE, FEDERAL PRACTICE ¶ 15.04, at 945 (2d ed. 1968).

first cause of action, he also dismissed it for failure to satisfy the jurisdictional amount requirement of 28 U.S.C. § 1332 (a).

■ A plaintiff can aggregate his causes of action in order to satisfy the jurisdictional amount requirement of 28 U.S.C. § 1332(a). 1 J.Moore, Federal Practice ¶ 0.97, at 822 (2d ed. 1964). Therefore, a holding in this case that plaintiff's second cause of action did state a claim upon which relief could be granted will have the effect of curing the jurisdictional amount deficiency which required the dismissal of his first cause of action. Hence, the question before us on appeal is the propriety of the District Judge's dismissal of plaintiff's second cause of action.

■ Under the Federal Rules of Civil Procedure, pleadings are to be construed liberally and "a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" 2A J. Moore, Federal Practice ¶ 12.08, at 2273–74 (2d ed. 1968) (author's emphasis). Despite certain deficiencies in the complaint, we are of the opinion that the District Judge's dismissal of the second cause of action was improper when measured against this standard. We therefore reverse.

Under the terms of the stock option agreement, plaintiff was permitted to purchase 4,000 shares of defendant's stock on February 1 of each year from 1962 through 1966, provided he remained in the continuous employ of defendant during the year in which the right to exercise the option accrued. The option agreement also provided that, "Nothing contained in [it] shall limit whatever right the Company * * * might otherwise have to terminate the employment of the Optionee." In the employment contract it was agreed that, "The Company shall have the right to terminate this Employment Contract at any time.* * * *" Defendant contends that these provisions permitted it to discharge plaintiff at any time, with or without cause; and that since plaintiff was discharged prior to February 1, 1965, he was not entitled to acquire the 4,000 shares of stock he could have purchased on that date had he remained in defendant's employ.

A similar contention was considered in Coleman v. Graybar Electric Co., 195 F. 2d 374 (5th Cir. 1952). There the plaintiff brought an action to recover added compensation to which he claimed he was entitled under the company's compensation plan. A prerequisite to obtaining the added compensation was continuous employment during the year in which it was earned and the defendant had discharged the plaintiff 44 days before the end of the year. In defending the action the defendant relied on the provision in the employment agreement which stipulated that "employment is at the discretion of the company and may be terminated at any time," and the provision in the compensation plan that "Nothing in [the] compensation plan shall be deemed to waive or impair any right of the Company * * * as to hiring, laying off, discharging * * *" The company contended that these provisions allowed it to terminate the plaintiff's employment at any time and for any reason, and to thereby foreclose his right to any added compensation he might have obtained by remaining in the company's employ until the end of the year.

The court disagreed. It held that:

[A] construction of the language which would permit the employer to terminate the continuity of service *without any cause and as a matter of arbitrary choice, or because of a desire to evade the payment of additional compensation would be entirely inconsistent with the purpose of the plan and, in the absence of clear and compelling language, should not be adopted.* * * * We do not think the language of the employment application which granted the employer the right to terminate the employment in its discretion at any time can be so imported into the language of the com-

pensation plan as to authorize a construction of its provisions to mean also that a discharge, even if otherwise authorized without cause, would bring such a cessation of employment within the terms of the forfeiture provision. 195 F.2d at 377 (emphasis added).

Accordingly, the court reversed the District Judge's direction that the jury return a verdict for the defendant and remanded in order to give the plaintiff an opportunity to prove that his discharge was arbitrary and without cause.

■ *Coleman* is consistent with the principle that courts will strictly construe contractual provisions which authorize the forfeiture of important rights almost earned by the rendering of substantial service. Unless the language of the contract is so clear as to permit no other reasonable interpretation, such provisions will be construed to prevent arbitrary action in reliance on them. 195 F.2d at 378. See also, Corbin, Contracts §§ 153, 552 at 210–11 (1963).

Of course, in *Coleman* the court was attempting to ascertain the law of Texas where as here it is Ohio law with which we are concerned. In Harding v. Montgomery Ward Co., 58 N.E.2d 75 (Ohio App.1944), the Ohio Court of Appeals held that an employer could prevent an employee from obtaining a bonus by discharging him prior to the end of the period for which he had to remain in the employ of the company in order to qualify. However, the employment contract in *Harding* permitted termination "whether it be for cause or otherwise," and also provided that "[I]f the manager's services are terminated, either by the company or by the manager, the manager forfeits his right to bonus for the entire year in which his services are

terminated." 58 N.E.2d at 76. Thus, the right to foreclose the receipt of any added compensation by discharging the plaintiff, even without cause, was abundantly clear.[3]

Moreover, in an earlier Ohio case, which the court failed to mention in *Harding*, the Ohio Court of Appeals had indicated that the principle enunciated in *Coleman* may be applicable in Ohio. In The Parish & Bingham Corp. v. Jackson, 16 Ohio App. 51 (1921), the company instituted a profit-sharing plan which required employees to remain in the employ of the company throughout the year in order to qualify for a bonus. A little more than three months prior to the expiration of the year the plaintiff was discharged and the company refused to pay the bonus. Although the opinion does not reveal the breadth of the company's power to discharge, the court held that because the plaintiff was discharged without cause[4] the company was liable for the entire amount that would have been due if the plaintiff had been permitted to complete the one year employment requirement.

The decisions in *Coleman* and *Jackson* indicate that it is not certain that plaintiff "is entitled to no relief under any state of facts which could be proved in support of [his] claim." 2A J. Moore, Federal Practice, supra at 2273–74.[5] Therefore, dismissal of his second cause of action was erroneous.

We refrain from indicating any opinion about the merits of this controversy, and in particular whether defendant had cause to discharge plaintiff.

The decision of the District Court is reversed and the cause remanded for further proceedings consistent with this opinion.

3. The court in *Coleman,* supra, made this same observation in distinguishing *Harding* from its case. 195 F.2d at 378.

4. This question was submitted to a jury in the lower court and the jury found that the plaintiff had been wrongfully discharged.

5. In its brief defendant challenges the adequacy of plaintiff's allegation that his discharge was without cause. Although plaintiff never uses the precise words "without cause", we find that the complaint as a whole adequately informed the defendant that an element of plaintiff's cause of action would be that his discharge was without cause.