HANDY ANDY, INC., Appellant,

v.

Kent RADEMACHER, Appellee.

No. 04–81–00468–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 25, 1984.

F. Scott Radke, Radke, Strickland & Radke, San Antonio, for appellant.

J. Anthony Guajardo, San Antonio, for appellee.

Before ESQUIVEL, CANTU and REEVES, JJ.

## OPINION

REEVES, Justice.

This appeal concerns an oral employment contract terminable at the will of either party and a bonus incentive plan. The appellant (employer), challenges the jury findings and the consequent judgment awarding recovery to the appellee (employee), of the bonus which accrued during his employment but payable after the termination of his employment.

Appellee went to work for the appellant in 1977. He was, at that time, shown an instrument styled BONUS INCENTIVE PLAN FOR STORE MANAGEMENT PERSONNEL which, in pertinent part states:

4. Bonuses are paid annually at the end of the fiscal year upon completion of our outside audit. This usually occurs in the latter part of May (6 to 8 weeks) after the close of the fiscal year.

\* \* \* \* \* \*

7. An employee must be actively employed regardless of position or be on an approved leave of absence when bonuses are paid in order to receive any bonus earned while employed in a Management position in our Supermarkets.

During the ensuing three and one-half years appellee was transferred to different positions with appellant; each commanding an increase in salary. The contract of employment was oral and indefinite as to time. Either party had the right to terminate the contract at will. On or about April 1, 1979, appellee was transferred to appellant's store in McCreless Mall, San Antonio, as its manager where he continued to work until he was terminated. On

December 18, 1979, appellee signed an instrument styled DISCRETIONARY BONUS INCENTIVE PLAN FOR STORE MANAGEMENT PERSONNEL which stated in part:

1. Handy Andy, Inc. will have the sole discretion to determine who shall be paid and what management position should receive a bonus.

 \* \* \* \* \* \*

4. Bonuses will be paid at the sole discretion of Handy Andy, Inc. management, and will be paid upon completion of Handy Andy Inc.'s annual audit.

 \* \* \* \* \* \*

7. Handy Andy management determines when bonuses are paid after the completion of the year-end fiscal audit. The bonus, as hereinabove specified, is not an earned income of the employee, but a discretionary plan whereby each employee must be actively employed with the company at the time payment is received.

8. THIS PLAN IS AT THE SOLE DISCRETION OF MANAGEMENT AND MAY BE AMENDED OR CANCELLED AT ANY TIME.

I hereby acknowledge that this plan can be revoked at the sole discretion of management of Handy Andy, Inc. and, further, that I must remain in the employment of Handy Andy, Inc. at the time payments are made. In other words, I will not be entitled to any payments under this plan unless I am employed with the company at the time payments are made. Being employed at the close of the fiscal year of Handy Andy, Inc. does not qualify me to received [sic] payment. The purpose of this plan is to create incentive within the company and to reward those individuals who produce above average.

/s/ K. Rademacher 12/18/79
Store Manager

On March 3, 1980, appellee was called to appellant's office where he was given a choice of either resigning or being discharged. Appellee chose resignation. This was approximately three and one-half to four weeks prior to the end of the fiscal year. Appellant paid bonuses upon completion of the outside audit which occurred the latter part of May or the first part of June.

Upon appellant's failure to pay appellee under the bonus plan for the period April 1, 1979 to March 3, 1980, appellee instituted this lawsuit to recover, pro rata, the share of the bonus due at the time of his discharge. The jury found the following: (1) that appellee's employment with Handy Andy was terminated without just cause; (2) that appellee was entitled to receive a bonus at the end of appellant's fiscal year 1980; and (3) that the bonus amounted to $6,633.00.

Appellant brings six points of error which can be grouped as follows:

(1) No evidence or insufficient evidence that appellant terminated the employment of appellee or in the alternative, if appellant terminated the employment of appellee, the evidence is factually and legally insufficient to show that appellant did not have good cause for discharging appellee. Further, that there was no evidence that appellant was required to have good cause to discharge appellee.

(2) That there was no evidence or insufficient evidence that appellee was entitled to receive a bonus at the end of appellant's fiscal year 1980.

(3) That there was no evidence or insufficient evidence that appellee was entitled to a bonus in the amount of $6,633.00.

 In considering a no evidence point, we must review the evidence in its most favorable light in support of the jury findings, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences contrary to that finding. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.1974). In determining the factual sufficiency of the evidence we must consider and weigh all the evidence, including any contrary to the trial court's judgment. *Burnett v. Moty-*

*ka,* 610 S.W.2d 735 (Tex.1980). There was more than sufficient evidence that appellant forced appellee to submit his resignation. No one ever contested the fact that appellee wanted to remain in the employment of appellant, and it was appellant's own witness who testified that appellee was given the choice to quit or get fired. Indeed, at the identical time appellee was receiving his ultimatum, a new manager was in route or had already taken over the managerial responsibility of the McCreless Handy Andy.

■ Appellee's managerial acumen was sharply contested. The large shrinkage in the inventory, the cleanliness of the store, preferable treatment of certain employees and indifference or rudeness to its customers were the primary complaints of appellant. Appellant also testified that the same store's net profit for the fiscal year prior to appellee's managership was $50,000.00 in excess of the year in which appellee was manager. Appellee, in contrast, introduced evidence that the shortage was due to certain sections of the store not being inventoried, that the uncleanliness of the store was attributable in great part to the age of the building, that required changes made by him did irritate some employees and that the success of his managership was evident by the operating gain of $462,639.00 during the fiscal year in which he was manager. We are of the opinion that the jury had sufficient evidence upon which to base its answer that appellant did not have "good cause" to discharge appellee and that such findings were not manifestly unjust.

■ In considering appellant's remaining points of error we must first look to the instrument which was shown appellee styled "BONUS INCENTIVE PLAN FOR STORE MANAGEMENT PERSONNEL" when he entered employment with appellant in 1977. It is noted that the plan specifically states that bonuses are paid annually at the end of the fiscal year upon completion of the outside audit under certain conditions. One of the conditions was that the employee must be actively em-

ployed *when bonuses are paid in order to receive any bonus earned while employed.* There is nothing in the instrument that specifically states or even implies that the final decision as to payment lies within the discretion of management. There was evidence by appellants that the payment plan, since its inception in 1927, had been discretionary and the ultimate decision whether a bonus was paid was left with management. There was equally forceful testimony on the part of appellee that the bonus was or had become an integral part of his salary. Indeed, he testified prior to his execution of the instrument styled, "DISCRETIONARY BONUS INCENTIVE PLAN FOR STORE MANAGEMENT PERSONNEL" as follows:

Q: [D]id you have a conversation with Mr. Hubbard concerning that—that paper there that you have [Discretionary Bonus Incentive Plan for Store Management Personnel]?

A: Yes, I did. Because from what I could quickly read. He brought it in and he was in a hurry ... he brought it in and I could tell from reading it, all of a sudden there was no longer an incentive bonus plan. It was a discretionary bonus plan and I asked Mr. Hubbard right there at the bakery department, I said, 'You're taking away the bonus from the looks of it. My bonus is part of my salary. That's the way it's always been presented to me. That's how you all transferred me from Austin to this store, under the assumption that I was to receive between six and eight thousand dollars bonus at the end of the year and that's why I wasn't given a salary increase because of the amount of bonus that's always been paid out of this store.'

On another occasion during the trial, appellee testified as follows:

Q: Well, were the—did the bonus ever come into the discussion in your pay when you discussed these changes?

A: The only time the bonus ever came into the discussion in talking with everyone was just the time I had to move. Like, when I—when I moved from Houston to San Antonio, San Antonio to Austin, then from Austin back here. The only time the bonus was discussed, it was part of your salary, either one way or the other or we'd either figured the increase on salary based on what I made on bonus or I didn't get a raise coming from Austin back to San Antonio because the bonus was talked about as part of the salary.

Q: In other words, you were always told that the raise was actually the extra money you were going to get in bonus and that was part of your salary?

A: Yes, sir, it was always considered part of the salary.

The jurors, being the exclusive judges of the weight and credibility of the witnesses, certainly received sufficient evidence upon which they could affirmatively find that appellee was entitled to receive a bonus at the end of the Handy Andy's fiscal year of 1980.

Appellant also contends that the trial court erred in submitting the issue of bonus to the jury, in that both agreements specifically provide that the bonus would not be paid unless appellee was in the employment of appellant, and that it was uncontradicted that appellee had left the employment some four months prior to the payment of the bonus. Further, appellee signed an agreement on December 18, 1979, about 2½ months before he was fired, acknowledging that the plan was discretionary on the part of management and acknowledging that appellee would not be entitled to payment under the plan unless actually in the employment of Handy Andy at the time the payment was made. However, appellee had, at the time of signing, already worked approximately 8½ months, under a bonus plan which he contended, and the jury concurred, was an integral part of his compensation.

Appellant's witnesses testified that the purpose of the plan was to challenge certain personnel to increase sales. The December 18, 1979 agreement reiterates that goal, in stating, "the purpose of this plan is to create incentive within the company and to reward those individuals who produce above average." We note that the increased productivity of employees motivated by the bonus inures also to the benefit of the employer by way of those employees' increased productivity.

A like situation is found in *Marvin Turner Engineers v. Allen*, 326 S.W.2d 200 (Tex.Civ.App.—Austin 1959, no writ). In *Marvin*, the employee was discharged in the 11th month of his employment. The employer refused to pay the bonus because the employee had not continued in his employment through the current year. In allowing the pro rata share of the bonus, the court held, "A bonus is not a gift or gratuity but a sum paid for services." *Id.* at 203.

In *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773 (Tex.1974), Miller, a used car manager at Riata, brought suit to recover an annual bonus which was based upon an oral employment contract. The employment contract was terminated when Miller was discharged in October. Riata refused to pay him a pro rata share of the annual bonus for the time that he had worked for the company in 1971, asserting that such bonus was to be paid Miller only in the event he held the position of used car manager in December. The Supreme Court held that, "an employee who is discharged without good cause prior to the time specified for payment of a bonus is entitled to recover a pro rata part of such bonus for the period he actually worked." *Id.* at 775. We hold the trial court did not err by submitting the issue of bonus to the jury.

Lastly, we hold that there is sufficient evidence to support the jury's finding that appellee's bonus amounted to $6,633.00. The computation as to the amount was developed upon cross-examination of one of appellant's officers who spe-

cifically testified that the bonus due under the plan in effect at the time of appellee's discharge for the fiscal year of 1979 until March 2, 1980, the date of appellee's discharge, was $6,633.00.

The judgment of the trial court is affirmed.