**ENSTAR CORPORATION, Unimar Company, Unistar, Inc., Allied Corporation and Union Texas Petroleum, Corp., Appellants,**

v.

**Ralph O. BASS, George A. Faigle, Gary R. Hall, Willie D. Lebow, John H. Moffitt, Michael A. Mosley and Gilbert C. Tompson, Appellees.**

No. 08–86–00347–CV.

Court of Appeals of Texas, El Paso.

Sept. 2, 1987.

Charles Tighe and Rick G. Strange, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellants.

Dale Strauss, Tom Scott and Gregg Owens, Bullock, Scott & Neisig, Midland, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

OSBORN, Chief Justice.

The opinion of this Court issued on July 29, 1987, is withdrawn and the following is the opinion of the Court.

This appeal is from a judgment awarding seven company employees amounts claimed to be due under an employee incentive plan after their employment had been terminated. We affirm in part, reverse in part and remand for the entry of a new judgment.

Enstar Corporation had a Reserve Incentive Program to give key professional and managerial personnel a "piece of the action" and an opportunity to earn substantial rewards by sharing in the success of the company. The plan was developed to encourage key personnel to find new oil and gas reserves and to economically produce those reserves. Based upon the incentive units awarded to each employee and the success of the company's operation, a formula was devised by which a specific sum of money would be allocated to each employee in the program. The sum awarded was then payable in equal installments for four consecutive years. A new "Reserve Pool" was established each calendar year. The value of each employee's benefits was determined by (1) the total number of incentive units designated, (2) the number of units awarded a particular employee, and (3) the size of the Reserve Pool. The attached exhibit shows how the formula was calculated and the manner in which payments were made. After being in the program for four years, an employee would receive payments based upon four years of participation, and thus have a strong incentive to remain with the company and see that it continued to be a profitable operation. The pamphlet which describes the program contains the following language which is critical to the rights of the parties in this case:

> You must be employed by the Company on December 31 of a Program year in order to earn the incentive units you were awarded for that Program year.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> No vesting will occur in this Program, nor will there be any transfer of property rights. If you terminated your employment with the Company for any reason other than death, retirement or per-

manent disability, you would receive no further payments for incentive units nor payments from the Phase-In Plan and would forfeit all unpaid incentive units. If you were to die, the value of all unpaid incentive units would be paid to your estate in a lump sum. If you retired or became permanently disabled, the value of all unpaid incentive units would be paid to you annually as though you were still an active employee.

In 1984, Enstar was acquired by another company, and a subsidiary, Union Texas Petroleum Company, took over Enstar's operation. As a result of this acquisition and consolidation of operations, Union Texas did not need to retain all of Enstar's employees and the seven employees who filed this suit were all terminated, except for one who elected to take early retirement at the end of October, 1984. The other six were terminated on October 19, 1984.

The trial court entered a partial summary judgment on the issue of liability and then heard evidence on the issue of damages, and awarded all seven employees incentive benefits for ten months in 1984 and for all of 1982 and 1983, less a six percent discount on payments to be made in the years 1987 and 1988, plus prejudgment interest and attorneys' fees. The total judgment was for $463,265.42, plus prejudgment interest of $10,910.77, and attorneys' fees of $77,000.00, if all appeals are taken.

The Appellants contend the trial court erred in granting Appellees' motion for partial summary judgment and in denying their motion for partial summary judgment. They also assert that the Appellees are not entitled to payments beyond 1983 because they were no longer employees performing a service for the company on December 31, 1984.

We are cited to three cases which have passed upon similar issues. In *Coleman v. Graybar Electric Co.*, 195 F.2d 374 (5th Cir.1952), the employee worked under an incentive compensation plan. The plan required that the employee be in the service of the company on the first day of April in the following year for which the additional compensation was payable. The application for employment provided that "employment is at the discretion of the company and may be terminated at any time." Mr. Coleman was terminated on February 15, 1949, and he sued for the compensation benefits earned the preceding year, even though he was not employed on April 1 of the following year. The court noted the compensation plan was to provide "an incentive to continuous service with the Company." It recognized that an employee who voluntarily quit or was terminated for cause would forfeit benefits under the plan. The court then said:

> However, a construction of the language which would permit the employer to terminate the continuity of service without any cause and as a matter of arbitrary choice, or because of a desire to evade the payment of additional compensation would be entirely inconsistent with the purpose of the plan and, in the absence of clear and compelling language, should not be adopted.

\* \* \* \* \* \*

We conclude that in this case the contract did not authorize a forfeiture of additional compensation provided in the plan of compensation if the services of the employee were terminated arbitrarily and without cause.

Thus, we see that where the employee worked the whole year, and was terminated without cause, he could recover even though he was not employed on the critical date required by the compensation plan.

A somewhat similar situation was before the Supreme Court of Texas in *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex.1974). Mr. Miller was employed as used car manager with a monthly salary, plus a monthly bonus based upon the company's gross profits. The bonus was usually paid in March following the year in which it was earned. He was discharged on October 20, 1971, and the company contended he was required to hold the position

of used car manager on December 25 in order to be entitled to a bonus for that year. A jury found that the company did not have good cause to terminate Mr. Miller's employment. Citing the *Coleman* case and others, Justice Sam Johnson wrote:

> We agree with the Court of Civil Appeals' holding that an employee who is discharged without good cause prior to the time specified for payment of a bonus is entitled to recover a pro rata part of such bonus for the period he actually worked.

Thus, where the employee was terminated without good cause before the end of the calendar year, he was permitted to recover a pro rata part of the bonus for the period he actually worked.

Finally, in *Handy Andy, Inc. v. Rademacher*, 666 S.W.2d 300 (Tex.App.—San Antonio 1984, no writ), the employee worked under an oral employment contract terminable at the will of either party. The company had a bonus incentive plan which required that the employee be actively employed at the time the bonus was paid. Mr. Rademacher was advised in March, 1980, that he could resign or be discharged. He resigned. This was about a month before the end of the fiscal year and three months before the bonus would be paid. He sued for his bonus, and the jury found that he was terminated without just cause and that he was entitled to a bonus for the fiscal year. The appellate court affirmed the pro rata recovery for the eleven months of the fiscal year that Mr. Rademacher was employed.

Thus, where the employee was terminated without good cause before the end of the fiscal year, he was permitted to recover a pro rata part of the bonus for the period he actually worked even though he was not actually employed at the time the bonus was paid as required by the bonus incentive plan.

All parties assert the Reserve Incentive Plan is unambiguous. If a written instrument is so worded that a court can properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980).

Obviously the Reserve Incentive Program adopted by Enstar Corporation was to enable it to obtain and retain top quality personnel in key company positions by providing an opportunity for substantial bonuses based upon the company's success in locating and producing new reserves at a minimum cost. By providing for bonus payments over a four-year period, each employee had an incentive to remain with the company rather than quitting and taking employment with another company which would result in a forfeiture of earned but unpaid bonuses. The layering effect placed the greatest incentive upon employees who had qualified under the plan for four successive years. The plan specifically precluded recovery by employees who voluntarily left the company for reasons other than retirement or permanent disability. Employment was required on the last day of the year "to earn" the benefits for that particular year. No mention is made in the plan of the company's termination of an employee's employment, whether for good cause or without good cause.

We conclude, in accordance with the cited cases, that under this Reserve Incentive Program, an employee would not earn any bonus for a given year if he voluntarily terminated his employment prior to December 31, or was terminated for good cause. If the employee was employed on December 31, his bonus was earned for that year. The bonus would be paid over a four-year period as employment continued. If the employee left the company voluntarily or was terminated for good cause before the end of four years, he would only be entitled to those payments made for the years he was employed on December 31. If an employee was terminated without good cause, he would be entitled to all past years' bonuses which had been earned and remained unpaid, and would earn a pro rata bonus for the part of the year worked prior to termination of his employment.

Thus, we hold that these seven employees are entitled to recover all bonuses earned for the years 1982 and 1983. They are entitled to a pro rata part of the bonus earned for 1984. Mr. Tompson should recover judgment for $10/12$ of the 1984 bonus. The fact that he took early retirement rather than be discharged should not disqualify him from receiving earned benefits. In *Handy Andy, Inc. v. Rademacher,* supra, the employee resigned before he was discharged. The other six employees should recover judgment for $292/365$ of their 1984 bonus, and not $10/12$ as awarded by the trial court. All are entitled to prejudgment interest as awarded by the trial court, and the trial court properly discounted the amount awarded on the sums which had not matured at the date of judgment. We affirm as to the award of attorneys' fees and court costs. We sustain, in part, as to Appellants' Point of Error No. Three. Points of Error Nos. One, Two and Four are overruled.

We reverse the judgment of the trial court and remand the case to that court for the entry of a judgment, in accordance with this opinion. Except as provided herein Appellants' and Appellees' motions for rehearing are overruled.

### APPENDIX B

### PAYOUT OF VALUE OF INCENTIVE UNITS

The hypothetical participant, John J. Doe, used the Program Worksheet shown below to determine his payout for the Program year under discussion. The Worksheet assumes that the value of his incentive units in Program years 1982 through 1984 was $6,500, $10,000 and $13,000 respectively.

This Worksheet shows clearly the layering effect as unpaid incentive units accumulate over time. Mr. Doe would receive $11,650 early in 1986 as a result of his participation in Program years 1982 through 1985.

**ENSTAR**

ENSTAR Petroleum, Inc.
3600 Capital Bank Plaza
P.O. Box 4576
Houston, Texas 77210
(713) 654-4466

DATA AND WORKSHEET FOR CALCULATING
**E & P RESERVE POOL**
FOR PROGRAM YEAR ENDING DECEMBER 31, 19 _85_

Participant's Name: _JOHN J. DOE_    Position and/or Title: _GEOLOGIST_    Region:

**AWARD DATA FOR PROGRAM YEAR:**

a. E & P Reserve Pool Contribution
   _3_ % of Value of New Reserves
   _1_ % of Net Profits

b. Incentive Units Awarded to Participant: | 30 | UNITS

c. Total Units Awarded and Reserved by Region: | 1,000 | UNITS

**2. ACTUAL RESULTS FOR THIS PROGRAM YEAR:**
   $ _12,000,000_
   $ _21,000,000_

**3. CALCULATION OF VALUE OF PARTICIPANT'S INCENTIVE UNITS FOR THIS PROGRAM YEAR:**

a. Total Pool Contributions This Year:
   $ _360,000_ Value of New Reserves
   $ _210,000_ Net Profits
   $ _570,000_ Total Pool Size This Program Year

b. ÷ Pool Size by Total Incentive Units for Region to Get
   Value of One Incentive Unit = $ _570_

c. Unit Value × Number of Participant's Units
   = Participant's Total Value $ _17,100_

USE THIS WORKSHEET TO DETERMINE YOUR INDIVIDUAL PAYOUT FROM E & P RESERVE POOLS:

| Program Year | Incentive Units Number Awarded | Total $ Value | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 | 1988 |
|---|---|---|---|---|---|---|---|---|---|
| 82 | 30 | 6,500 | 1,625 | 1,625 | 1,625 | 1,625 | | | |
| 83 | 30 | 10,000 | | 2,500 | 2,500 | 2,500 | 2,500 | | |
| 84 | 30 | 13,000 | | | 3,250 | 3,250 | 3,250 | 3,250 | |
| 85 | 30 | 17,100 | | | | 4,275 | 4,275 | 4,275 | 4,275 |
| TOTAL PAYOUT FROM POOL: | | | $ 1,625 | 4,125 | 7,375 | 11,650 | | | |