Opinion issued June 29, 2006












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00367-CV




PAUL LEWIS, Appellant

V.

VITOL, S.A., AND VITOL, S.A., INC., Appellees




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 0357354




MEMORANDUM OPINION
          The issue in this appeal is whether appellant, Paul Lewis, is entitled to recover
a bonus he allegedly earned while working for his former employer, Vitol S.A. and
Vitol S.A., Inc. (collectively, “Vitol”), under the terms of either (1) Lewis’s written
employment contract or (2) a subsequent oral agreement. The trial court granted
Vitol’s motion for summary judgment. We affirm.
BACKGROUND
          Vitol, a derivatives trading company, hired Lewis to be one of its two natural
gas traders. On August 23, 1999, Lewis and M.A. Loya, the president of Vitol,
signed an employment agreement, which stated that Lewis would receive an annual
salary of $125,000. The employment contract further provided that Lewis was
“eligible to receive a yearly bonus based on the various performance parameters” and
that the “bonus is at the sole discretion of the management.” The contract also
guaranteed Lewis a $50,000 signing bonus.
          From August 1999 through the end of that year, Lewis lost $1 million dollars
for Vitol, but he still received a $50,000 bonus based on the terms of his employment
agreement (presumably the signing bonus). In 2000, Lewis made profits of at least
$6.25 million dollars and, in March of 2001, he received a bonus of $850,000, which
was approximately 14% of the profits he made in 2000. In 2001, Lewis made profits
of approximately $6.25 million dollars, and in March 2002, he received a bonus of
$800,000, which was approximately 13% of the profits he made in 2001. In 2002,
Lewis made profits of approximately $19.6 million dollars.
          On Friday, February 21, 2003, Lewis had what he described as his annual
“bonus meeting” with Loya and Jeff Hepper, a member of the executive committee
of Vitol’s parent company. Lewis described the meeting as a “negotiation,” at which
the trader would be asked what he thought his bonus should be and the management
would tell the trader what it expected to pay. As Lewis stated in his deposition:
You obviously came in arguing for as much money as you can, and
they’re obviously going to want to pay you as little money as they have
to in order to keep you. So, that’s kind of the purpose of the bonus
meeting, as I understood it, that they’re kind of feeling out your
expectations so that they don’t overpay you more than what they would
have to to keep you.

          At the bonus meeting, Lewis argued that, because of the profitable year he had
in 2002, he should receive a $3 million dollar bonus. Loya responded by writing
down the number $2.3 or $2.35 million dollars. Lewis testified that, at the end of the
meeting, Hepper then said, “Hey, come one. Vitol is still a great place to work. You
have your equity.”
          On Monday, February 24, 2003, the first workday after his bonus meeting,
Lewis had what he describes in his brief as “a very bad day.” Because he was short
on the market, Lewis spent the day buying gas futures. However, gas prices
continued to climb during the day and, by the time the exchange closed, the natural
gas market had suffered a 12 standard deviation move and Lewis had lost $50 million
dollars. The $50 million dollar loss negated the $23 million dollar profit that Lewis
had produced thus far in 2003 and incurred an additional $27 million in losses. Over
the next few days, Lewis lost another $20 million dollars, but he was able to recoup
approximately $10 million dollars during the next three weeks.
          On March 15, 2003, the Vitol executive committee met in Paris. At the
executive meeting, the committee reached the general consensus that Lewis should
not receive a bonus and that his employment should be terminated. Lewis was
officially fired on March 23, 2003. Vitol did not pay him a bonus.
          Lewis filed suit against Vitol alleging that (1) Vitol breached the written
employment contract by refusing to pay him a bonus, or (2) Loya, on behalf of Vitol,
entered into a new contract with Lewis at the February 21 bonus meeting when he
told Lewis, “Look, it’ll be between 2.4 and 2.8 [million dollars].” Vitol filed a
combined traditional and no-evidence motion for summary judgment contending that 
Lewis had presented no evidence of a binding contract, either written or oral,
obligating it to pay Lewis a bonus. The trial court granted Vitol’s motion and this
appeal followed.
PROPRIETY OF SUMMARY JUDGMENT
A. Standard of Review
          When a party moves for summary judgment under both rules 166a(c) and
166a(i), we first review the trial court’s judgment under the standards of rule 166a(i).
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant fails
to produce more than a scintilla of evidence under that burden, then there is no need
to analyze whether appellee’s summary judgment proof satisfies the less stringent rule
166a(c) burden. Id.
          Rule 166a(i) provides that after an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential element of
the nonmovant’s claim or defense. Tex. R. Civ. P. 166a(i). The motion must
specifically state the elements for which there is no evidence. Id.; Johnson v. Brewer
& Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002). The trial court must grant the
motion unless the nonmovant produces summary judgment evidence that raises a
genuine issue of material fact. See Tex. R. Civ. P. 166a(i) & cmt.; Sw. Elec. Power
Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).
          We review the evidence in the light most favorable to the party against whom
the no-evidence summary judgment was rendered. King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 751 (Tex. 2003); Johnson, 73 S.W.3d at 197; Morgan v. Anthony, 27
S.W.3d 928, 929 (Tex. 2000). If the nonmovant brings forward more than a scintilla
of probative evidence that raises a genuine issue of material fact, then a no-evidence
summary judgment is not proper. Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex.
App.—San Antonio 1998, pet. denied).
B. Employment Contract Regarding Bonus
          The elements of breach of contract include (1) the existence of a valid contract;
(2) performance or tendered performance by the plaintiff; (3) breach of the contract
by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. 
Valero Mktg. & Supply Co. v. Kalama Int’l, L.L.C., 51 S.W.3d 345, 351 (Tex.
App.—Houston [1st Dist.] 2001, no pet.) (emphasis added). In its motion, Vitol
argued that there was no evidence of the first element, i.e., no evidence of a valid
contract requiring it to pay a bonus to Lewis.
          In response to the motion for summary judgment, Lewis argues that, under
Texas law, a bonus is not a gift or gratuity, but is a sum paid for services rendered. 
Citing Miller v. Riata Cadillac Co., 517 S.W.2d 773, 775 (Tex. 1974) and Handy
Andy, Inc. v. Rademaker, 666 S.W.2d 300, 304 (Tex. App.—San Antonio 1984, no
writ), Lewis contends that he had already earned his 2002 bonus before he was fired
in March 2003 and, therefore, he was entitled to be paid the full amount of his bonus. 
We agree that, under Riata and Handy Andy, an employee who is discharged without
good cause prior to the time specified for payment of a bonus is entitled to recover
a pro rata part of such bonus for the period he actually worked. Riata, 517 S.W.2d
at 775. However, in both Riata and Handy Andy, the employee was contractually
entitled to receive a bonus, but was fired before the date specified for paying the
bonus arrived. In Riata, the fired employee had a valid oral contract that required his
employer to pay him an additional yearly bonus of two and one-half percent of the
annual net profits of the company. 517 S.W.2d at 774. In Handy Andy, the company
had a written bonus incentive plan, which provided, “Bonuses are paid annually at the
end of the fiscal year upon completion of our outside audit.” 666 S.W.2d at 301. 
There was no issue in either Riata or Handy Andy regarding whether the employee
was contractually entitled to receive a bonus—the only issue was whether he could
be denied the bonus he was already contractually entitled to by being fired before the
date for payment of the bonus arrived. We conclude that before the Riata and Handy
Andy holdings apply, an employee must first show that he is contractually entitled to
receive a bonus. Therefore, the first issue we must decide is whether Lewis’s written
employment contract entitled him to receive a yearly bonus.
          1. No Evidence of Written Contract to Pay Bonus
          Lewis argued, in response to the motion for summary judgment, that the
portion of his employment contract regarding whether he was entitled to a yearly
bonus was ambiguous, and that such ambiguity presented a fact question prohibiting
summary judgment. As a general rule, an ambiguity in an agreement presents a fact
question that precludes the granting of a summary judgment. Thompson v. Hambrick,
508 S.W.2d 949, 952 (Tex. Civ. App.—Dallas 1974, writ ref’d n.r.e.).
          Whether a contract is ambiguous is a question of law to be decided by
examining the contract as a whole in light of the circumstances present when the
contract was made. Universal Health Servs., Inc. v. Renaissance Women’s Group,
P.A., 121 S.W.3d 742, 746 (Tex. 2003); Columbia Gas Transmission Corp. v. New
Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). A contract is not ambiguous if it
can be given a certain or definite meaning as a matter of law. Universal Health
Servs., 121 S.W.3d at 746; Columbia Gas Transmission Corp., 940 S.W.2d at 589. 
Lack of clarity does not create an ambiguity. Universal Health Servs., 121 S.W.3d
at 746. Further, a contract is not ambiguous simply because the parties advance
conflicting interpretations. Columbia Gas Transmission Corp., 940 S.W.2d at 589;
Forbau, 876 S.W.2d at 134. Rather, a contract is ambiguous if it is subject to two or
more reasonable interpretations after one applies the pertinent rules of construction. 
Universal Health Servs., 121 S.W.3d at 746; Columbia Gas Transmission Corp., 940
S.W.2d at 589. If a contract is ambiguous, a fact issue exists regarding the parties’
intent. Columbia Gas Transmission Corp., 940 S.W.2d at 589.
          To determine whether a contract is ambiguous, we look at the agreement as a
whole and in light of the circumstances present when the parties entered into the
contract. Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.
1995). We examine and consider the entire writing in an effort to harmonize and to
give effect to all the provisions of the contract so that none will be rendered
meaningless. Forbau v. Aetna Life Ins. Co, 876 S.W.2d 132, 133-34 (Tex. 1994). No
single provision will control; rather, all provisions must be considered with reference
to the whole instrument. Id. 
          Lewis urges the Court to construe the employment contract strictly against
Vitol because it was the drafter of the agreement. But, the doctrine of contra
proferentem is applied only when construing an ambiguous contract. See Evergreen
Nat. Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669, 676 (Tex. App.—Austin 2003,
no pet.). Likewise, we will consider parol evidence to determine the meaning of a
contract only if the contract is first determined to be ambiguous. See Kelly-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998) (stating that
“[p]arol evidence is not admissible for the purpose of creating an ambiguity”). 
Therefore, we first decide whether the employment contract is ambiguous, i.e.,
whether it is subject to two reasonable interpretations.
          The employment contract provides the following compensations provisions:
Salary: $125,000 annually (one hundred and twenty five thousand U.S.
dollars) paid semi-monthly.
 
Benefits: Mr. Lewis will receive all the benefits of a trading position in
the Houston office, for example medical insurance, retirement
contributions, participation in the 401(k) plan.
 
Bonus: Mr. Lewis is eligible to receive a yearly bonus based on the
various performance parameters considered by the company. The bonus
is at the sole discretion of the management. (Emphasis added.)
 
Signing Bonus: Mr. Lewis is to receive a retention fee of $50,000 (fifty
thousand U.S. dollars one month after commencement of his work at
Vitol).

          Lewis argues that the term “eligible to receive a yearly bonus” means that he 
will receive a yearly bonus and the management’s “sole discretion” is limited to
determining the amount of that bonus based on “various performance parameters.” 
In contrast, Vitol argues that its management retained “sole discretion” to determine
whether a bonus would be given at all and what, if any, the amount of that bonus
would be.
          We agree that Vitol’s interpretation of the bonus provision is the only
reasonable interpretation. To make this determination, we examine the contract as
a whole, not merely the bonus provision. See Universal Health Servs., 121 S.W.3d
at 746. The “Benefits” provision of the contract states that “Mr. Lewis will receive
all the benefits of a trading position in the Houston office . . . .” The “Signing Bonus”
provision states that “Mr. Lewis is to receive a retention fee of $50,000 . . . .” 
However, in contrast, the “Bonus” provision states that “Mr. Lewis is eligible to
receive a yearly bonus . . . .” The word “eligible” is a limitation that is not present in
any of the other compensation provisions, thereby indicating that Lewis is not
guaranteed a bonus, but is qualified, or eligible, to be considered for a bonus.
          The “Bonus” provision of the contract also says that “[t]he bonus is at the sole
discretion of the management.” The clause does not say, as Lewis argues, that the
amount of the bonus is at the sole discretion of the management. Black’s Law
Dictionary defines “sole discretion” as “[a]n individual’s power to make decisions
without anyone else’s advice or consent.” Black’s Law Dictionary 499 (8th ed.
2004).
          Therefore, we conclude that Vitol’s management reserved the power to
determine if it would pay Lewis a bonus and how much that bonus would be. In other
words, the bonus was purely discretionary—Lewis was not contractually entitled to
it. As such, the Handy Andy and Riata line of cases does not apply.
          Accordingly, we hold that there is no evidence of a valid written contract
requiring Vitol to pay Lewis a yearly bonus.
          2. No Evidence of an Oral Contract to Pay Bonus
          In its motion for summary judgment, Vitol contended that there was no
evidence of a valid oral contract requiring it to pay Lewis a bonus. In response,
Lewis argued that an oral agreement was formed at his February 21 bonus meeting
when Loya said, “Look, [the bonus will] be between 2.4 and 2.8 [million dollars].” 
          Vitol contends that this is not evidence of a valid oral contract because there
was no consideration given to support such a contract. Lewis, however, argues that
the consideration was his promise to continue as Vitol’s employee, which he accepted
by showing up for work the following Monday morning.
          It is undisputed that Lewis was an at-will employee. Under Texas law, an at-will employment relationship does not prevent an employer and employee from
entering into an otherwise enforceable agreement. Light v. Centel Cellular Co. of
Tex., 883 S.W.2d 642, 644–45 (Tex. 1994). However, the Light case discusses an
important limitation on this right to contract between an at-will employee and his or
her employer:
At-will employees may contract with their employers on any matter
except those which would limit the ability of either employer or
employee to terminate the employment at will. Consideration for a
promise, by either the employee or the employer in an at-will
employment, cannot be dependent on a period of continued employment. 
Such a promise would be illusory because it fails to bind the promisor
who always retains the option of discontinuing employment in lieu of
performance.

Id. (footnote omitted) (emphasis added).
          Lewis acknowledges that his promise to continue employment is illusory, but
contends that he converted his illusory promise into a binding bilateral contract by
accepting Vitol’s offer of a bonus by performance, i.e., showing up for work on
Monday. We disagree. Although Lewis showed up for work on Monday, he
nevertheless, as an at-will employee, retained the option of quitting at any time. For
an at-will employee, a promise of continued employment is no promise at all. 
          In Light, the Texas Supreme Court noted that the promise of a raise to an at-will employee is illusory because it is conditioned upon some period of continued
employment. 883 S.W.2d at 645 n.5. We can see no difference in promising an
employee a discretionary bonus. Just as an employer could fire an at-will employee
and be under no obligation to pay a promised raise, it could also fire an at-will
employee and be under no obligation to pay a discretionary bonus.
          Because the alleged oral agreement is based on illusory consideration, there is
no evidence of an enforceable oral contract to pay Lewis a bonus.
 
CONCLUSION
          Because we have held that there is no evidence of an enforceable contract to
pay Lewis a bonus—either written or oral—the trial court properly granted Vitol’s
no-evidence motion for summary judgment.
          We affirm the judgment of the trial court.
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Taft and Nuchia.