Kenneth F. MILLER, Petitioner,

v.

**RIATA CADILLAC COMPANY,**
Respondent.

No. B–4616.

Supreme Court of Texas.

Dec. 30, 1974.

Rehearing Denied Jan. 24, 1975.

James R. Warncke, San Antonio, for petitioner.

Horace P. Shelton, San Antonio, for respondent.

SAM D. JOHNSON, Justice.

This is a suit brought to recover a pro rata share of an annual bonus allegedly owed plaintiff Kenneth F. Miller under his oral contract of employment with defendant Riata Cadillac Company. After a trial on the merits, a take-nothing judgment was rendered *non obstante veredicto*. The court of civil appeals affirmed. 508 S.W. 2d 124. We reverse.

Miller was employed as the used car manager for Riata on February 10, 1968 pursuant to an oral agreement with Hubert Riley, president and general manager of Riata. Miller was to receive a monthly salary of $350, plus a monthly bonus based on the gross profits of the new and used car departments under a fixed graduated scale. Miller alleged that an additional bonus of two and one-half percent of the annual net profits of Riata was also an element of his compensation. He alleged that this bonus was usually paid at the end of March following the year in which it was earned. Annual bonuses were paid to him under this contract for the years 1968, 1969 and 1970. Thus under the facts of this case there was an implied renewal of the contract for the year 1971. This employment contract was terminated when Miller was discharged on October 20, 1971. His monthly salary and monthly bonus were paid in full up to the date of the termination of his employment. Riata, however, refused to pay him a pro rata share of the annual bonus for the time that he worked for the Company in 1971, asserting that such bonus was to be paid to Miller only in the event he held the position of used car manager on December 25. Since Miller was discharged on October 20, 1971, Riata claimed no part of the annual bonus was owed him for 1971. Miller's successor received the annual bonus for the remainder of the 1971 calendar year, but only on a pro rata basis for the period he actually held the position of used car manager. The result is that Riata paid the annual bonus for the period from January, 1, 1971 to October 20, 1971 neither to Miller nor to his successor.

At trial Riata sought a summary judgment on the grounds that the agreement was an unenforceable oral contract within the Statute of Frauds, Vernon's Texas Business and Commercial Code Annotated, Section 26.01 (Texas UCC 1968).[1] The

---

1. The pertinent portions of Section 26.01 state:
   "(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
   "(1) in writing; and
   "(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

   "(b) Subsection (a) of this section applies to
   " . . . .
   "(6) an agreement which is not to be performed within one year from the date of making the agreement; . . . ."

trial court determined that the contract was not within the Statute of Frauds and entered a partial summary judgment ordering the cause be tried only on the question of whether Miller was entitled to a proportionate share of the annual bonus for the part of the year he actually worked for Riata. In addition the trial court sustained Riata's special exception to Miller's alternative plea for recovery on a *quantum meruit* and ordered same stricken.

In response to the only special issue submitted, the jury found Riata did not have good cause to terminate the employment of Miller on October 20, 1971. Miller conceded that he was employed for an indefinite period of time and, therefore, could have been discharged for any reason at any time. He argues, however, that since he was discharged through no fault of his own Riata's right to discharge was without prejudice to his own right to receive a pro rata part of the promised annual bonus for the period he actually worked. The trial court found no evidence Riata did not have good cause to discharge Miller and entered a take-nothing judgment in favor of Riata *non obstante veredicto*. The court of civil appeals affirmed, but on different grounds. It held that an employee who is discharged without good cause prior to the time specified for payment of a bonus is entitled to recover a pro rata part of such bonus for the period he actually worked. However, the court of civil appeals affirmed the judgment of the trial court on the theory that the oral agreement was within the Statute of Frauds. In support of this theory the court of civil appeals pointed to that part of Miller's petition which alleged that the bonus was "usually" payable in March of the year following the year in which it was earned. The court of civil appeals believed this arrangement illustrat-

ed that full performance of the agreement could not be had within one year, and thus the contract was within the terms of the Statute of Frauds.

▉ We agree with the court of civil appeals' holding that an employee who is discharged without good cause prior to the time specified for payment of a bonus is entitled to recover a pro rata part of such bonus for the period he actually worked. *See* Haggar Company v. Rutkiewicz, 405 S.W.2d 462 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.); Fujimoto v. Rio Grande Pickle Company, 414 F.2d 648 (5th Cir. 1969); Coleman v. Graybar Electric Co., 195 F.2d 374 (5th Cir. 1952); 56 C.J. S. Master and Servant § 112(6); Annot., 81 A.L.R.2d 1066, 1080. We disagree, however, with the court of civil appeals' holding that the oral contract in question is within the Statute of Frauds.[2]

▉ If a contract can, from the terms of the agreement, be performed within one year it is not within the Statute of Frauds. *E. g.*, Chevalier v. Lane's, Inc., 147 Tex. 106, 213 S.W.2d 530 (1948); Wright v. Donaubauer, 137 Tex. 473, 154 S.W.2d 637 (1941). In Bratcher v. Dozier, 162 Tex. 319, 346 S.W.2d 795 (1961), it was made clear that indefinite term employment contracts, such as the agreement in question, are considered performable within one year and therefore do not fall within the Statute of Frauds. This court there stated:

"The agreement in question is a simple contract of employment for an indefinite period of time. Generally, where no period of performance is stated in such contracts the statute is inapplicable. See the language in Wright v. Donaubauer, 137 Tex. 473, 477, 154 S.W.2d 637, 639, Texas Jurisprudence, 20A, pp. 318–319,

---

2. In addition to contending that the contract is not within the Statute of Frauds, Miller argues alternatively that, if it is, his full performance under that contract is sufficient to relieve him of strict compliance with the Stat-

ute. Since we agree that the contract is not within the Statute of Frauds, we find it unnecessary to consider Miller's alternative argument.

and American Jurisprudence, Vol. 49, p. 388, wherein it is said:

'It is a well-established general rule that where no time is fixed by the parties for the performance of their agreement, and there is nothing in the agreement itself to show that it cannot be performed within a year according to its tenor and the understanding of the parties, the agreement is not within that part of the statute of frauds which requires contracts not to be performed within a year to be in writing.' " 346 S.W.2d 795 at 796.

*See also* Jackman v. Anheuser-Busch, 162 S.W.2d 744 (Tex.Civ.App.—Dallas 1942, writ ref'd); Talbott v. Gaty, 171 Kan. 136, 231 P.2d 202 (1951); 72 Am.Jur.2d Statute of Frauds § 34. Moreover, a practice of not actually compensating an employee for the services he has rendered until sometime after the year in question will not bring the contract within the Statute of Frauds as long as full performance under the contract within the year is possible. Texarkana Lumber Co. v. Lennard, 104 S.W. 506 (Tex.Civ.App.1907, writ ref'd) (contract employing doctor until lumber company "cut out" timber not within the Statute of Frauds even though the agreement recited that the company could possibly be so engaged for two years); Swain v. Harmount & Woolf Tie Co., 226 Ky. 823, 11 S.W.2d 940 (1928) (contract to cut timber, which was capable of full performance within one year only if extra assistants were employed, not within the Statute of Frauds); Valley Planting Co. v. Wise, 93 Ark. 1, 123 S.W. 768 (1909) (contract to superintend harvest of crop which, under excellent weather conditions, might have been completed within one year not within the Statute of Frauds). *See* Annot., 129 A.L.R. 534, 542–543; Annot., 104 A.L.R. 1006–1007; Note, 1 Tex.L.Rev. 230 (1923). The fact that the bonus in question was not "usually" paid until March does not mean that it could not conceivably be ascertained and paid within one year. Moreover, the general rule is that

the fact a bonus cannot be ascertained and paid until after the year in which services were rendered does not bring the contract within the Statute of Frauds. White Lighting Company v. Wolfson, 68 Cal.2d 336, 66 Cal.Rptr. 697, 438 P.2d 345 (1968); Murphy v. Buschman-Jennings, Incorporated, 382 S.W.2d 29 (Mo.Ct.App.1964); Dennis v. Thermoid Co., 128 N.J.L. 303, 25 A.2d 886 (1942); Kneeland v. Shroyer, 214 Or. 67, 328 P.2d 753 (1958); 37 C.J.S. Statute of Frauds § 62a.

■ Respondent argues that the instant case is controlled by Chevalier v. Lane's, Inc., *supra,* and Paschall v. Anderson, 127 Tex. 251, 91 S.W.2d 1050 (Tex.Com.App. 1936, opinion adopted). Neither of these cases is in point. In *Chevalier* the contract was for employment for a period of one year, which employment was to begin *after* the date on which the contract was entered. Thus, the terms of the agreement clearly indicated that the contract could not have been fully performed within one year from the date the contract was made. Paschall v. Anderson, *supra,* involved an oral contract to manage a ranch for a period of time in excess of one year and thus could not, by its terms, have been performed within one year.

■ Petitioner Miller has an additional point before this court complaining of the court of civil appeals' action in refusing to consider his point complaining of the trial court's action in sustaining Riata's special exception. Since this was a jury trial and Miller did not file a motion for new trial, he is limited on appeal to his complaint of the court's action in rendering judgment *non obstante veredicto* and may not complain of the court's action in sustaining Riata's special exception. Texas Rules of Civil Procedure, rules 324, 325; City of Corpus Christi v. Gregg, 155 Tex. 537, 289 S.W.2d 746 (1956); City of Fort Worth v. Hill, 306 S.W.2d 817 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n. r. e.); Harmon v. City of Dallas, 229 S.W.2d 825 (Tex. Civ.App.—Dallas 1950, writ ref'd n. r. e.).

Respondent Riata Cadillac has an additional point before this court asserting the trial court properly disregarded the jury's finding that Riata did not have good cause to discharge Miller. If sustained, this "no evidence" point would vitiate the jury's verdict and require affirmance of the trial court's judgment. Jackson v. Ewton, 411 S.W.2d 715 (Tex.1967). We find the point to be without merit.

In considering Riata's "no evidence" point, we of course must view the evidence in its most favorable light in support of the jury finding of lack of good cause, considering only the evidence and inferences which support that finding and rejecting the evidence and inferences contrary to that finding. E. g., Langlotz v. Citizens Fidelity Insurance Company, 505 S.W.2d 249 (Tex.1974); Butler v. Hanson, 455 S.W.2d 942 (Tex.1970). Hubert Riley, president of Riata Cadillac, testified as to Miller's dedication and exceptional service during 1968, 1969 and 1970. Notwithstanding this exceptional record, Miller was discharged on October 20, 1971 for allegedly failing to carry out Riley's company policies. However, even Riley admitted that much of his knowledge of Miller's activities was hearsay and that Riley was away a good part of the time during which Miller was allegedly violating company policy. In addition, both the service manager and the new car sales manager testified that they did not know of any misconduct on the part of Miller. Miller stated that the acts alleged to be misconduct were authorized by Riley. When the evidence in the instant case is closely examined, we are unable to say that this record contains no evidence to support the jury's finding that Riata did not have good cause to discharge Miller.

The judgment of the court of civil appeals is reversed and judgment is hereby rendered that petitioner Miller recover the sum of $12,458.36 which is 293/365th of the stipulated net profits that would have been owed Miller had he worked the entire year of 1971.