Flores v. Flores 















WITHDRAWN 2-3-93
IN THE
TENTH COURT OF APPEALS
 

No. 10-92-135-CV

     ALBERT FLORES,
                                                                                              Appellant
     v.

     PEGGY ANN FLORES,
                                                                                              Appellee
 

From the County Court at Law No. 2
Brazos County, Texas
Trial Court # 31,463A-CCL2
                                                                                                    

O P I N I O N
                                                                                                    

      In this appeal we determine that the evidence to support a finding that a common law marriage
existed between Peggy Ann Flores, Appellee, and Albert Flores, Appellant, is legally insufficient
under the amended version of section 1.91 of the Family Code. See Tex. Fam. Code Ann. §
1.91 (Vernon 1975 & Supp. 1992).
      The court found that a common law marriage existed and granted Peggy a divorce, custody
of the minor child, and child support. Albert appeals alleging six points of error: (1) the evidence
is legally and (2) factually insufficient to prove Peggy and Albert agreed to be married, (3) the
evidence is legally and (4) factually insufficient to prove Peggy and Albert represented to others
that they were married, (5) the 361st Judicial District Court of Brazos County had continuing
jurisdiction, and (6) the trial court erred in ordering child support payments of at least 25% of
Albert's net resources.
FACTS PRESENTED
      Peggy and Albert were ceremonially married on July 18, 1987. A child, Joshua, was born
to the couple on December 5, 1987. Albert sought a divorce, which was granted on March 9,
1989. Afterward, the couple continued to live together until November of 1990 when Albert
moved out of the house and in with his girlfriend, Lisa. On January 1, 1991, Albert and Lisa
were ceremonially married. Peggy filed for divorce on January 31 based on a common-law
marriage, seeking managing conservatorship of the child and child support.
      The record shows that Albert and Peggy had lived together before they were ceremonially
married in 1987. The fact that Albert and Peggy continued to live together after their divorce is
not disputed. Peggy testified that on one occasion after their divorce Albert introduced her as "my
wife, Peggy." Although Peggy testified that she still considered herself to be married after the
1989 divorce, she told hospital personnel that she was single when she was admitted to a hospital. 
Albert testified that he did not intend to continue to be married. Irma Ortega, Peggy's employer,
testified that she did not know of the 1989 divorce, that she thought they were married until she
learned that Peggy had filed for divorce, that Albert would send gifts to Peggy at work with
affectionate notes, that Peggy kept pictures of Albert and their child at work, but that she had
never heard Albert or Peggy introduced to anyone else. Relatives of both parties testified that the
relationship after the 1989 divorce continued much as it was before.
      After the divorce, Albert and Peggy signed a lease together that did not specify their
relationship. Albert continued to pay the rent and the utility, telephone, and other bills. He
allowed Peggy to use his credit cards. They maintained a joint bank account and had sexual
relations. Albert testified that Peggy had a copy of the divorce decree in 1989 and that "she asked
me if I could stay with her and get herself back on her feet." He further testified that he moved
back in with Peggy "to help her out." He also said that when he met Lisa he told her that he was
"living with my wife and helping her out."
ELEMENTS OF AN INFORMAL MARRIAGE
      Section 1.91(a) of the Family Code provides:
(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman
may be proven by evidence that:
. . .
(2) they agreed to be married, and after the agreement they lived together in this state
as husband and wife and there represented to others that they were married.
Id. § 1.91(a)(2). Thus, a party may establish a common-law marriage by proof of three necessary
elements: (1) the parties agreed to be married, (2) after the agreement the parties lived together
in this State, and (3) they represented to others in Texas that they were married. Id. The evidence
must show that the parties intended to have a present, immediate, and permanent marital
relationship and that they did in fact agree to be husband and wife. Winfield v. Renfro, 821
S.W.2d 640, 645 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Although the three
elements may occur at different times, until all three exist, there is no common law marriage. Id.
at 646.
      Prior to September 1, 1989, section 1.91(b) provided that the agreement to be married could
be inferred if it were proved that the parties lived together as husband and wife and represented
to others that they were married. Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 1.91, 1969
Tex. Gen. Laws 2707, 2717. However, this provision was repealed in 1989, and section 1.91(b)
now limits the time to sue to prove the marriage's existence. Tex. Fam. Code Ann. § 1.91(b).
      The legislature has also declared the public policy to be that a marriage is considered valid
unless it is expressly made void by the Family Code, or made voidable by the Family Code and
annulled. Id. § 2.01 (Vernon 1975). The most recent of two marriages is presumed to be valid
as against the earlier marriage. Id. Thus, the marriage between Albert and Lisa is presumed to
be valid, and Peggy bore the burden of proof on all of the elements of her alleged common-law
marriage. See id. 
STANDARD OF REVIEW
      The court made no findings of fact. Thus, necessary findings are implied in support of the
judgment. See Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989). Implied findings may
be challenged by legal and factual sufficiency points the same as jury findings and a trial court's
findings of fact. Id. In assessing a no-evidence point, we view the evidence in the light most
favorable to the findings, considering only the evidence and inferences which support the findings
and rejecting the evidence and inferences contrary to the findings. See Miller v. Riata Cadillac,
517 S.W.2d 773, 777 (Tex. 1974). If there is any evidence of probative force to support the
findings, they are binding on us. See Behring Intern. v. Greater Houston Bank, 662 S.W.2d 642,
648 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). A "no-evidence" point must, and may
only, be sustained when the record discloses one of the following: (a) a complete absence of
evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is
no more than a mere scintilla; (d) the evidence established conclusively the opposite of the vital
fact. Juliette Fowler Homes, Inc. v. Welch Associates, Inc., 793 S.W.2d 660, 666 n.9 (Tex.
1990) (citing Robert W. Calvert, "No Evidence" & "Insufficient Evidence" Points of Error, 38
Tex. L. Rev. 361 (1960)).
ANALYSIS
      We find three cases decided since the amendment. Winfield v. Renfro, decided after the
change in section 1.91(b), held that evidence of an agreement to be married may be inferred from
cohabitation and representations. Winfield, 821 S.W.2d at 645-46. The opinion does not discuss
the amendment. The Beaumont Court of Appeals rejected a contention that section 1.91 as
amended requires "direct and indisputable evidence that both appellant and appellee made an
outright statement that `we agree to be married,'" saying that such an interpretation would be
tantamount to an abolition of common-law marriages in Texas. Russell v. Russell, No. 09-91-099-CV, slip op. at 5-6 (Tex. App.—Beaumont October 1, 1992, n.w.h.). The court further states that
"regardless of the amendment of sec. 1.91(b), an agreement to be married may be inferred from
direct or circumstantial evidence which preponderates that the parties lived together in the State
of Texas and did, in Texas, represent to others that they were married." Id. at 7. In Lorensen v.
Weaber, the Dallas Court of Appeals held the evidence of a common-law marriage to be
insufficient, saying, "While it is unclear how specific the evidence of an agreement to be married
must be after the statutory provision allowing inference of an agreement was repealed, it is clear
that such evidence does not exist in this case." Lorensen v. Weaber, No. 05-91-01379-CV, slip
op. at 5 (Tex. App.—Dallas September 9, 1992, n.w.h.).
      We agree with Professor McKnight that non-marital cohabitation for extended periods of time
is far more common than it once was and that evidence of a tacit agreement to marry should be
weighed more carefully than in the past. See Joseph W. McKnight, Family Law: Husband and
Wife, 44 Sw.L.J. 2-3 (1990). Occasional references to "my wife" or "my husband" do not prove
a tacit agreement to be married without corroboration. Id. If the statement is made in a self-serving context—such as a deponent's reference to his marital situation in order to show a stable
family relationship, an application to a lender by one seeking a loan, or by the person seeking to
admit himself or herself to a hospital—it may not have great weight. Id. On the other hand, a
forthright assertion of marriage with the consequences of liability—such as when an alleged spouse
seeks admission of the other to a hospital or the filing of an joint income tax return—may be far
more probative of such an agreement. Id. Testimony indicating the state of mind of either party
that a marriage did not exist during the cohabitation should have greater weight than before the
amendment to section 1.91. Id.
      Unless a statute is ambiguous, we must follow its clear language and seek the intent of the
legislature as found in the plain and common meaning of the words and terms used. Moreno v.
Sterling Drug, Inc., 787 S.W.2d 348, 352 (Tex. 1990); RepublicBank Dallas, N.A. v. Interkal,
Inc., 691 S.W.2d 605, 607 (Tex. 1985). If the statute is clear and unambiguous, extrinsic aids
and rules of statutory construction are inappropriate, and the provisions should be given their
common everyday meaning. Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983). 
      Section 1.91(a) uses clear language to require "evidence . . . that they agreed to be married." 
Generally any ultimate fact may be established by circumstantial evidence as well as by direct
evidence. Employers Mutual Liability Ins. Co. v. Strother, 347 S.W.2d 957, 958 (Tex. Civ.
App.—Waco 1961, no writ). An ultimate fact may be conclusively shown by wholly
circumstantial evidence. Prudential Ins. Co. v. Krayer, 366 S.W.2d 779, 780 (Tex. 1963). Thus,
we conclude that the plain meaning of the statute as it exists allows proof of an agreement to be
married by direct evidence, by a combination of direct and circumstantial evidence, or by wholly
circumstantial evidence.
      Here, there is no direct evidence of an agreement to marry. A review of the record reveals
no evidence from which an agreement to marry might be inferred. At most the evidence that
shows that Peggy and Albert lived together after the divorce and that their personal and financial
relationship continued almost unchanged. In light of Peggy's failure to produce any direct
evidence of an agreement or any evidence from which an agreement might be inferred, we hold
that the evidence is legally insufficient to support the implied finding. Miller, 517 S.W.2d at 777;
Lorensen, No. 05-91-01379-CV, slip op. at 5. Accordingly, we sustain point one, reverse the
judgment, and render judgment that Peggy Ann Flores take nothing by her suit.
      Because of our disposition of point one, we do not reach the remaining points of error.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Justice Cummings and
          Justice Vance
          (Chief Justice Thomas not participating)
Reversed and rendered
Opinion delivered and filed December 30, 1992
Publish WITHDRAWN 2-3-93