Chad WILSON, Plaintiff–Appellant

v.

NOBLE DRILLING SERVICES, INC., Defendant–Appellee.

No. 10–20129.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 2010.

Ellen Sprovach, Rosenberg & Sprovach, Houston, TX, for Plaintiff–Appellant.

Marc H. Klein, Tamara Raquel Jones, Thompson & Knight, L.L.P., Dallas, TX, for Defendant–Appellee.

Before REAVLEY, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM: *

Chad Wilson ("Wilson"), brought suit against his employer, Noble Drilling Ser-

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be

vices, Inc. ("Noble"), alleging that he was discharged in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–54, and that Noble is liable for breach of contract under state law. The district court granted summary judgment in favor of Noble on both claims. We **AFFIRM.**

## FACTS AND PROCEEDINGS

In 2007, Wilson, who was hired by Noble in 1997, learned that his wife was pregnant and due in early 2008. Initially, Wilson and his wife planned for Wilson's mother-in-law to serve as the baby's caretaker, but in late 2007, his mother-in-law was diagnosed with cancer. According to Wilson, on two separate occasions in late December 2007 and in January 2008, Wilson told Kurt Hoffman ("Hoffman"), his immediate supervisor at Noble, that he "might" need to take leave to care for the baby. Wilson similarly apprised Hoffman's administrative assistant, Montana Owen ("Owen"), that he "might" need to take leave to care for the baby.

On January 1, 2008, based on Hoffman's recommendation, Wilson received a raise and was promoted to the position of Domestic Marketing Manager. Unsatisfied with the raise, Wilson emailed Noble's Vice President of Administration, Tom Madden ("Madden"), on February 13, 2008. Wilson wrote that he had a "great concern that the recent raise associated with [the] promotion [was] not consistent with the [position]." Madden told Wilson to direct his concern to Hoffman and forwarded Wilson's email to Hoffman.

Noble contends that by contacting Madden directly, Wilson failed to follow Noble's "Open Door" policy and chain of command. Noble asserts that Wilson did not apologize to Hoffman for having emailed Madden and that Wilson did not respond to Hoffman's efforts to teach proper protocol. According to Hoffman's testimony, Wilson was dismissive and unapologetic when Hoffman tried to speak with him about the email. Hoffman attested that after "careful reflection on what had transpired [during the conversation,] I lost trust in [Wilson's] ability to represent the company in the role I put him in" which involved "dealing with Noble's customers." On February 22, 2008, Hoffman and Madden informed Wilson that his employment with Noble was terminated.

Noble paid bonuses under its Short–Term Incentive Plan ("STIP") for the 2007 year on February 27, 2008. Pursuant to the STIP, an employee must have been employed on February 27, 2008 to be eligible for a 2007 bonus. Every employee under Hoffman's supervision on that date received a bonus. Wilson was not employed on February 27, 2008 and did not receive a 2007 STIP bonus. Hoffman stated at his deposition that Wilson would have received a 2007 STIP bonus had he not been fired before the bonus was distributed.

Wilson filed this lawsuit in district court alleging that Noble retaliated against him in violation of the FMLA and that Noble breached its contract by failing to pay him a 2007 STIP bonus. Noble moved for summary judgment which the district court granted as to both claims. Wilson timely appealed.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo. Fahim v.*

published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

*Marriott Hotel Servs., Inc.,* 551 F.3d 344, 348 (5th Cir.2008). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.CIV.P. 56(a). On appeal this court "may affirm a grant of summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Bayle v. Allstate Ins. Co.,* 615 F.3d 350, 355 (5th Cir.2010) (quotations omitted).

## DISCUSSION

### I. FMLA Retaliation Claim

The FMLA was enacted to permit employees "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). Eligible employees are entitled to a total of twelve weeks of leave during any twelve month period "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." *Id.* at § 2612(a)(1)(A).

The "FMLA ... protects employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cty.,* 446 F.3d 574, 580 (5th Cir.2006). The Fifth Circuit applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), when analyzing retaliation claims under the FMLA.[1] *Hunt v. Rapides Healthcare Sys., LLC,* 277 F.3d 757, 768 (5th Cir.2001) (citation omitted). To make a prima facie case for retaliation under the FMLA, a plaintiff must show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that he was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because he took FMLA leave. *Id.*

Once an employee succeeds in making a prima facie case, the burden shifts to the employer to articulate a legitimate nonretaliatory reason for the employment action. *Id.* "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quotation omitted). After the employer has done so, the employee must show by a preponderance of the evidence that the employer's reason is a pretext for retaliation. *Id.* at 143. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [engaged in retaliation]." *Id.* at 148. Upon such a showing, summary judgment for the employer is appropriate only if there are unique circumstances that

**1.** In the past, the Fifth Circuit has applied a mixed-motive framework in some FMLA cases. *See Richardson v. Monitronics Int'l., Inc.,* 434 F.3d 327, 333 (5th Cir.2005). The Supreme Court's recent opinion in *Gross v. FBL Financial Services, Inc.,* — U.S. —, 129 S.Ct. 2343, 2349, 174 L.Ed.2d 119 (2009) raises the question of whether the mixed-motive framework is available to plaintiffs alleging discrimination outside of the Title VII framework. The Sixth Circuit has since held that the mixed-motive framework still applies to FMLA claims, *Hunter v. Valley View Local Schools,* 579 F.3d 688, 692 (6th Cir.2009), but this circuit has yet to address the issue. Because Wilson has not argued that "the employer's reason, although true, is but one of the reasons for its conduct," the court need not consider the applicability of a mixed-motive framework to FMLA claims. *See Richardson,* 434 F.3d at 333.

would preclude the trier of fact from finding for the plaintiff. *See id.*

## A. *Prima Facie Case*

Wilson undisputedly suffered an adverse employment action when Noble terminated his employment. The close timing of approximately one month between Wilson's alleged protected activity—a request for FMLA-qualifying leave—and his termination date demonstrates causation for purposes of Wilson's prima facie case. *Swanson v. GSA,* 110 F.3d 1180, 1188 (5th Cir.1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation."). Nevertheless, Wilson cannot make a prima facie case because he cannot show that he engaged in a protected activity.

### i. *Protected Activity*

Wilson alleges that he engaged in an FMLA-protected activity by requesting leave to care for his child. Although a plaintiff is not required to specifically state that he is asserting rights under the FMLA, he must "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).

█ Wilson testified at his deposition that in late December 2007, he gave Hoffman "a heads-up ... that [he] might have to take leave ... early in the year after [the baby] was here." Wilson testified that he "told [Hoffman] the situation with my mother-in-law and her having breast cancer and that she was going to be the caretaker and she wasn't going to be able to, so it was either—[my wife] or me was going to have to stay with [the baby].... But it didn't get into any specifics as to

who, what, when, or where." Wilson testified that in January 2008 he spoke with Hoffman again and "reiterated that I was in the same situation ... that I still might have to take leave." Wilson summarized that "I told [Hoffman] what the situation was and the possibility was there ... but as to when that was going to happen, [I] wasn't sure, [I] didn't have details." On a monthly basis from fall 2007 through early 2008, Wilson similarly conveyed to Owen that he "might" need to take leave to care for the baby.

Wilson never informed Noble that he intended to take leave, only that he "might" need to take leave and that there was "possibility" that he would need to take leave. These comments were not sufficient "to make the employer aware that [he] need[ed] FMLA-qualifying leave." § 825.302(c). In addition, Wilson has not demonstrated that he made Noble aware of the "anticipated timing and duration" of any leave. § 825.302(c). He admits that he did not provide Hoffman with details as to when he might take leave or how long that leave would be. At one point during his testimony, Wilson did state that he told Hoffman that he "might" need to take leave "early in the year after [the baby] was here." However, this statement does not provide insight into "the anticipated timing and duration" of any leave because Wilson's son was born in late January and Wilson continued to work through early 2008 without taking FMLA leave. Wilson has not raised an issue of material fact as to whether he provided "verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of such leave." § 825.302(c).

## B. *Legitimate Non–Retaliatory Reason*

█ Assuming *arguendo* that Wilson could establish a prima facie case, his re-

taliation claim nevertheless fails. Noble has produced a legitimate non-discriminatory reason for Wilson's termination, namely his supervisor's loss of confidence in Wilson's ability to perform his current position after Wilson "failed to apologize for having bypassed Noble's Open Door policy and refused to accept Hoffman's counseling on chain-of-command protocol." In this circuit, "where there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer a legitimate, [non-retaliatory] reason that explains both the adverse action *and the timing.*" *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 408 (5th Cir.1999) (emphasis in original) (internal citations omitted). Noble has also provided a legitimate, non-retaliatory explanation for the timing of Wilson's termination: Hoffman reflected on his conversation with Wilson over the course of a week before deciding to fire him.

### C. *Pretext*

Wilson is unable to demonstrate an issue of material fact as to pretext. He advances three reasons as to why Noble's explanation was pretextual: (1) his recent promotion and raise; (2) Noble's failure to discipline him before terminating him; and (3) the close timing between his protected activity and his termination.

### i. *Promotion and Raise*

■ According to Wilson, Noble's proffered reason is pretextual because he received a promotion and a corresponding raise in January 2008 which is "hardly the loss of confidence that is Noble's pretextual reason for firing [him]." That Wilson received a promotion does not demonstrate that Noble's explanation is false. First, Noble's legitimate, nondiscriminatory reason for firing Wilson is based on events that occurred in February 2008, *after* Wilson's promotion and raise. Second, these

positive employment actions occurred after Wilson had told both Hoffman and Owen that he "might" need FMLA-qualifying leave. Noble would have been aware of Wilson's possible need for FMLA-qualifying leave when it promoted him and increased his compensation. That Wilson previously received a promotion and a raise does not show that Noble's stated reason for termination is pretextual.

### ii. *Failure to Discipline after Promotion*

Wilson argues that Noble's stated reason for firing him is pretextual because Noble never disciplined him after promoting him. Although an employer's failure to follow its own disciplinary policy may constitute evidence of pretext, *see Machinchick v. PB Power, Inc.,* 398 F.3d 345, 354–55 & n. 29 (5th Cir.2005), Wilson has not argued that it was Noble's policy to discipline employees before firing them, much less directed the court to supporting evidence.

### iii. *Close Timing*

Wilson argues that the close temporal proximity between his protected activity and his termination show that Noble's stated reason is pretextual. While this court has recognized that "[c]lose timing between an employee's protected activity and an adverse action may provide the 'causal connection' necessary to establish a prima facie case of retaliation," *Swanson,* 110 F.3d at 1188, suspicious timing alone is insufficient to establish pretext. *See id.*; *see also Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 656 (5th Cir.2004). Because all Wilson can show is close timing, he has not raised an issue of material fact as to pretext. Summary judgment on Wilson's FMLA retaliation claim was appropriate.

### II. Bonus Contract

■ Wilson contends that Noble breached its contract by failing to pay him bonus

compensation earned in 2007. The parties agree that Wilson's bonus eligibility and compensation for the relevant period was governed by the 2007 STIP, which stated: "To be eligible to receive a bonus payment with respect to a Plan year, the person must be actively employed on the last day of such Plan year and must continue to be employed through the date on which bonus payments for such Plan year are made." Wilson was fired five days before the date on which bonus payments were made under the 2007 STIP.

Under Texas law,[2] courts enforce an unambiguous written contract according to its own terms. *U.S. Fire Ins. Co. v. Confederate Air Force,* 16 F.3d 88, 91 (5th Cir.1994). In interpreting a written contract, "[t]he court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written." *Interstate Contracting Corp. v. City of Dallas,* 407 F.3d 708, 712 (5th Cir.2005). An ambiguity in a contract is a question of law which "arises only after the application of established rules of construction leaves an agreement susceptible to more than one [reasonable] meaning." *DeWitt Cty. Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex.1999).

Wilson does not argue that the STIP bonus contract is ambiguous.[3] Instead, he contends that he is entitled to receive the 2007 STIP bonus under *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773 (Tex.1974). *Miller* involved an oral contract between an employer and employee whereby the parties agreed that the employee was entitled to a bonus as part of his compensation. *Id.* at 774. The employer later claimed that bonuses were only paid to

employees who were employed on a certain date—a term that was not agreed upon by the parties or committed to writing. *Id.* The Texas Supreme Court held that the employee, who was discharged without good cause, one day prior to the bonus distribution date, was entitled to recover a pro rata share of the bonus. *Id.* at 775.

In this case, the written contract between Wilson and Noble expressly states that Wilson is entitled to the STIP bonus *only* if he is employed on the date that the STIP bonus is distributed. Because the contract is unambiguous and an unambiguous contract is enforced as written, Wilson is not entitled to the 2007 STIP bonus. Noble did not breach its contract with Wilson by failing to pay Wilson a pro rata share of his bonus.

## CONCLUSION

The district court's grant of summary judgment is **AFFIRMED**.

---

**2.** The parties agree that Texas law governs the STIP contract.

**3.** Wilson does not argue that the contract was illegal or otherwise unenforceable.