

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00364-CV

DAVIE C. WESTMORELAND D/B/A ALLEGHENY CASUALTY CO. BAIL BONDS, APPELLANT

V.

RICK STARNES D/B/A STARNES & ASSOCIATES AND THOMAS BEVANS, APPELLEES

On Appeal from the 361st District Court
Brazos County, Texas
Trial Court No. 09-000508-CV-361, Honorable Steven Lee Smith, Presiding

March 24, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Davie C. Westmoreland d/b/a Allegheny Casualty Co. Bail Bonds (Westmoreland) appeals from a judgment in favor of Rick Starnes d/b/a Starnes & Associates and Thomas Bevans (collectively referred to as Starnes) based on Westmoreland's failure to pay for services rendered under an oral contract between them. She contends the trial court erred in 1) denying her motion for judgment notwithstanding the verdict and motion for new trial due to the unenforceability of the

contract because of its violation of the statute of frauds, 2) excluding the testimony of her expert witness due to Westmoreland's failure to disclose the opinions of the expert, and 3) awarding attorney's fees if we reverse the judgment on either of the first two issues. We affirm the judgment.

Westmoreland posted six bonds totaling $140,000 for the release of Stephen Bruce Unger, Jr. from jail. On November 26, 2007, he failed to appear for court. After that, Westmoreland had 270 days in which to find Unger and return him or she would be liable for the bonds. In December 2007, she agreed to pay Rick Starnes, a bounty hunter, 10-20% of the bond if he located Unger. By the summer of 2008, Unger had not been found, and Starnes referred Westmoreland to Thomas Bevans who had contacts with the Federal Bureau of Investigation (FBI), other law enforcement personnel, and private investigators. Bevans claimed she orally agreed in July to pay him 20% of the bonds for locating Unger and 20% of all assets recovered. The FBI located Unger in the Ukraine and captured him on December 13, 2008. Westmoreland negotiated a settlement on the bond liability for half of the amount and recovered some assets.

When Westmoreland failed to pay, once Unger was arrested, Starnes sued. The causes of action included breached contract and quantum meruit. The jury found that Westmoreland had breached the agreement and awarded Starnes $34,850 plus attorney's fees.

*Statute of Frauds*

In her first issue, Westmoreland argues that the agreement was unenforceable under the statute of frauds since it had to be in writing, and it had to be written because it could take more than a year to perform it. We overrule the issue.

An "agreement which is not to be performed within one year from the date of" its execution must be in writing to be enforceable. TEX. BUS. & COM. CODE ANN. § 26.01(a) &(b)(6) (West 2015). An agreement that can be performed within that year is not subject to the requirement, however. *Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775, (Tex. 1974); *Double Diamond, Inc. v. Hilco Elec. Coop., Inc.*, 127 S.W.3d 260, 267-68 (Tex. App.—Waco 2003, no pet. ).[1] According to the evidence at bar, the agreement to capture Unger and discover his property was susceptible to performance within one year; indeed, it was performed within one year. Thus, it need not have been written.

*Expert Witness*

We next address the allegation about the trial court committing error when it excluded testimony of an expert. We are told:

> [T]he trial court should remand this case for a new trial because the trial court improperly excluded evidence that should have been admitted. The bounty hunters were required to be licensed by the Texas Department of Public Safety to be entitled to enter into agreements with bondsmen such as Ms. Westmoreland. A violation of the statute constituted a state jail felony. Ms. Westmoreland timely designated an expert and disclosed that he would testify about licensing of bounty hunters. All evidence reviewed by the expert was timely disclosed to the plaintiffs. Further, the plaintiffs did not depose the witness. Nevertheless, the plaintiffs objected to the expert testifying in the case and the trial court refused to allow the witness to testify about these matters. This was error. The disclosures were timely.

We overrule the issue.

According to Westmoreland's offer of proof, the expert would have testified:

> That he is familiar with the standards governing private investigators in the State of Texas on bail-related issues and that in reviewing those issues that he has determined that Thomas Bevans was not licensed between the period of September 30th, 2008 through December 31st, 2008, and

---

[1] Because this cause was transferred to the Seventh Court of Appeals from the Tenth Court of Appeals, we apply the precedent of the Tenth Court of Appeals when available. TEX. R. APP. P. 41.3.

that he was not able to act as a private investigator during that period of time which is the period relevant to this lawsuit.

It is also anticipated that Mr. Moore would testify that he has reviewed an affidavit prepared by Mr. Bevans in this case and that in that affidavit Mr. Bevans appears to falsely state that he was licensed when he was not and that he was aware of that because part of his problem was that he kept having to reapply, reapply after his license he discovered had expired.

Additionally, it is anticipated that Mr. Moore would testify that the actions taken by Mr. Bevans in this case were actions by an investigator. As the Court is aware, Mr. Bevans testified during his direct and cross-examination that he was attempting to find, they were doing a manhunt, there was an e-mail that specifically said that. And that is different than what they've been presenting to the Court before this time – before that time they were saying that they were just looking -- he was providing a doorway and that changed it. And I believe that that opens the door.

We believe that Mr. Moore would also testify that in doing investigative work to attempt to find assets under the definition in the investigator's statute, that also would require a license.

Finally, Your Honor, Mr. Moore would testify that performing those types of duties without a license would be a crime, a Class A misdemeanor.

Moore was identified as an expert witness in response to a request for disclosure. When Westmoreland sought to proffer him at trial, Starnes objected because the response failed to contain a synopsis of the expert's mental impressions and opinions. During the ensuing debate about whether the witness should be allowed to testify and while discussing the substance of Westmoreland's discovery response, the trial court asked counsel for Westmoreland to "[c]ite to me in here where I see his mental impressions and opinions." At that point, counsel admitted that "they are not in the disclosure."[2] He, nonetheless, suggested that his opponents could have discovered them by deposing the expert. So too did Westmoreland's attorney argue that his opponents knew that Westmoreland was attacking Bevans' ability to engage in the

---

[2] Perusal of the record reveals that they were not included in a supplement to the response, either.

contract at issue due to his lack of appropriate licensure;[3] that issue was supposedly broached in a motion for summary judgment.

Ultimately, the trial court said that "following Rule 194.2, . . . there has not been a providing of the general substance of the expert's mental impressions and opinions and a brief summary basis for them within the response. And as a result, Mr. Moore will not be able to testify to those matters." He was not prohibited from testifying on other matters, though. In so concluding, the trial court did not abuse its discretion.

Rule 194.2 of the Rules of Civil Procedure permits a litigant to discover the subject matter on which any expert will testify as well as "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them." TEX. R. CIV. P. 194.2(f)(2)&(3). Though a request for those impressions and opinions was made, Westmoreland failed to supply them, as conceded by her attorney at trial. Failing to supply them is basis for their exclusion, unless the omission arose from good cause or the evidence would not unfairly surprise or unfairly prejudice the other party. TEX. R. CIV. P. 193.6(a). And, the burden to establish good cause or lack of unfair surprise or prejudice is on the party seeking to introduce the evidence. TEX. R. CIV. P. 193.6(b).

As for the matter of good cause, Westmoreland says nothing of why the information was omitted. So, it cannot be said that her failure to comply with the discovery rule was justified by good cause.

---

[3] The Texas Occupations Code provides that a person commits an offense if he contracts with a bail bond surety to secure the appearance of a person who has jumped bail unless the person is a peace officer, an individual licensed as a private investigator or a commissioned security officer employed by a licensed guard company. TEX. OCC. CODE ANN. § 1702.3863(a) (West 2012).

5

As for prejudice and surprise, Westmoreland would have us accept that the tenor of her response provided sufficient notice to her opponents to vitiate any surprise and prejudice. That response constituted of her disclosing:

> Mr. Moore is an attorney who specializes in bail bond law and who is an expert on the ordinary customs and practices of bail bonds and bounty hunters. *He will testify as to what type of licensing is required of a private investigator and bounty hunter before they may participate in an ongoing investigation.* Mr. Moore will also testify as to the standard procedure for filing suits and the threshold for determining whether a suit is brought in bad faith or for purposes of harassment.

(Emphasis added). But, if one reads the offer of proof mentioned above, he would quickly see that the expert was going to testify about much more than licensing requirements of a private investigator and bounty hunter in general. The individual was going to 1) review documents purportedly obtained from a governmental agency, 2) conclude from those unauthenticated documents that Bevans had no license to provide services of a private investigator or bounty hunter, 3) opine that Bevans knowingly lied in an affidavit about the status of his license because he had to "reapply, reapply," 4) analyze the totality of the services Bevans provided and opine that placing phone calls and sending emails in effort to uncover property and the location of a person constituted acts requiring licensure, and 5) ultimately opine that Bevans committed a criminal act. An intent to address the subjects we itemized is not reasonably inferable from the scope of Westmoreland's response.

Nor is the happenstance that Starnes could have deposed the expert sufficient to negate surprise and prejudice. It is one thing to say that a litigant cannot claim surprise because he deposed a witness. S*ee State v. Target Corp.*, 194 S.W.3d 46, 51 (Tex. App.—Waco 2006, no pet.) (holding there was no unfair surprise when the expert's

6

report had been provided and he had been deposed twice). It is another to say that opting not to depose vitiates any claim of surprise or prejudice. A litigant should be able to rely on discovery responses provided by his opponent in determining what other discovery, if any, to pursue. If those responses are of an ilk suggesting that only certain topics will be discussed, an opponent need not be forced to wonder whether unrelated matter (outside the scope of the response) may also be broached. He need not be placed in a position of wondering whether the response is incomplete or inaccurate and weighing whether additional, economically burdensome, and potentially wasteful discovery efforts should also be pursued.

To adopt Westmoreland's suggestion that the opportunity to conduct depositions prevented Starnes from claiming surprise and prejudice would be tantamount to saying that Starnes (and future litigants) should doubt the accuracy or thoroughness of their opponent's discovery responses. We opt not to say that. On this matter we find the opinion in *Gibbs v. Bureaus Inv. Group Portfolio No. 14, LLC,* 441 S.W.3d 764 (Tex. App.—El Paso 2014, no pet.) most enlightening. There, the court rejected the argument that Gibbs suffered no surprise simply because "Gibbs bore the responsibility to 'inquire about or request additional information as to who exactly the designated witness for Bureaus would be or to attempt to seek additional information once the witness was designated.'" *Id.* at 768. The court did so because 1) Bureaus was "not excused from complying with the rules of civil procedure" and 2) the "contention eviscerates Rule 193.6(a)'s 'salutary effect of promoting full and complete discovery and instead invites trial by ambush, the very peril the promulgation of the rules of discovery sought to avert.'" *Id.*, *quoting Lopez v. La Madeleine of Tex., Inc.,* 200 S.W.3d 854 (Tex. App.—

7

Dallas 2006, no pet.).  A "party . . . 'is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory.'"  *Id., quoting Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911 (Tex. 1992).  No less is true here.  Litigants are entitled to rely on the discovery responses provided them.  That they do is not basis for later arguing that they should have known better.

Nor is the argument about having filed a summary judgment motion attacking Bevans' credentials enough for us to conclude that the trial court erred.  The motion does not appear of record.  Nor does the summary judgment evidence appended to the motion appear of record.  So, we do not know whether it was enough to somehow inform Starnes that the expert would be talking about more than mere licensing requirements.

Yet, even if Westmoreland filed a motion for summary judgment and thereby attacked the status of Bevans' investigator's license, that is not dispositive.  The issue is not simply whether he had a private investigator's license.  Indeed, that matter is of no import unless it is also established that the various acts he did were of the type requiring a license.  And, missing from Westmoreland's contentions at bar is reference to any summary judgment evidence from an expert (or any other person) purporting to illustrate that those acts fell under the requisite umbrella.  So, we cannot say that the trial court was obligated to conclude that the purported motion for summary judgment placed Starnes on notice of the expert's potential opinions regarding that topic (or of his views about Bevans committing a crime and lying).  We cannot say, from the record before us, that Westmoreland established the lack of surprise and prejudice.

Having overruled the first two issues, there is no need for us to discuss the third issue. Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice